**BELLEFONTE UNDERWRITERS INS. CO., et al., Appellants,**

v.

**Leon BROWN, et al., Appellees.**

**No. C2924.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 8, 1983.

Rehearing Denied Jan. 12, 1984.

Russell W. Schell, Thompson, Coe, Cousins & Irons, Dallas, Al Schulman, J. Edwin Smith, Houston, for appellants.

Guy C. Fisher, Fisher & Cook, Charles Blackley, Austin, Newton Schwartz, Houston, for appellees.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a judgment entered in favor of Appellee Leon Brown and Houston Wiper & Mill Supply Company and Appellant/Appellee Avrohm Wisenberg, et al.

In this suit, three major groups were involved: Leon Brown and his company, Houston Wiper & Mill Supply Company (hereafter referred to as "Brown"); the "Bellefonte defendants", composed of Bellefonte Underwriters Insurance Company, Armco, Inc., Armco Underwriters Agency, Armco Underwriters Agency of Texas, Inc., and James T. Gannon (hereafter referred to as "Bellefonte"); and the "Wisenberg defendants," composed of Avrohm Wisenberg, individually, and his several companies through which he represented Brown and Bellefonte: Delta Special Risks Agency, Wisenberg-Pozmantier & Co., d/b/a Sol L. Wisenberg Insurance Agency, and Delta General Agency Corporation.

Brown sued Bellefonte, alleging a cause of action on a fire insurance policy, tortious interference with contract, and deceptive trade practices. Wisenberg was joined as a defendant. Wisenberg then filed a cross-action against Bellefonte, alleging libel and deceptive trade practices. The jury returned a verdict in favor of Brown against Bellefonte for actual damages resulting from its breach of the fire insurance policy, punitive damages for tortious interference with contract and attorney's fees. The court rendered judgment in favor of Brown against all Bellefonte defendants for $1,372,464.00. The jury returned a verdict for Brown against Wisenberg for negligence in failing to include Replacement Cost Endorsement Form 164 in the Bellefonte fire insurance policy. On this finding, the court rendered judgment for Brown against Wisenberg in the amount of $34,-992.00. The jury also returned a verdict for Wisenberg against Bellefonte for $50,000.00 actual damages for libel, plus attorney's fees. The court trebled the actual damages under TEX.INS.CODE ANN. art. 21.21 § 16 (Vernon 1981), and rendered judgment for Wisenberg against Bellefonte in the total amount of $226,500.00. We reverse the judgment against Armco, Inc., one of the Bellefonte defendants, and render judgment in its favor. We also reverse that part of the trial court's judgment which denied Wisenberg indemnity from Bellefonte, and we render judgment in favor of Wisenberg against Bellefonte for indemnity in the amount of $34,992.00. We affirm the trial court's judgment in all other respects.

Brown operated an industrial rag recycling business in metal buildings located in Jacinto City, Texas. The storage of tons of highly flammable cloth near twenty-five hot driers and space heaters inside the building made Brown's business a high fire insurance risk.

Brown had purchased fire insurance for his business exclusively through Wisenberg since 1955. In some years, all of Brown's coverage was placed with a single company. However, in other years, the economic condition of the insurance industry forced Brown to divide his risk among several companies. Wisenberg maintained various agency relationships in these dealings. In this case, since Bellefonte was not admitted to do business in Texas, it acted through its agent, Armco Underwriters Agency of Texas, Inc., to authorize Wisenberg to bind coverage for Brown. In so doing, Wisenberg served as Bellefonte's surplus lines agent, acting by and through his own Delta Special Risks Agency. Wisenberg maintained the same relationship with Market Insurance Company. However, when dealing with all other insurance companies which covered Brown, Wisenberg served as a local recording agent.

On January 16, 1978, Wisenberg contracted with Bellefonte for a $600,000.00 excess and surplus lines policy for Brown. This coverage, which was bound on January 17, 1978, allegedly included premium discounts for the presence of an automatic sprinkler system in the west building of Brown's business. Wisenberg contracted with six other insurance companies to secure complete fire insurance coverage for Brown.

On January 19, 1978, three days after Roy Shoultz of Armco Underwriters Agency of Texas, Inc. bound Brown's coverage through Bellefonte, Wisenberg sent a transmittal letter to Shoultz concerning some specifics of the policy. Enclosed with the letter was a policy order form and two engineering reports. The policy order form

listed the endorsements which Wisenberg requested be included in Brown's policy. Although Wisenberg intended to request a Replacement Cost Endorsement Form 164 in the Bellefonte policy, and, although Bellefonte collected premiums for the endorsement, the endorsement form was not included in the policy. One of the two engineering reports was made by White & White Engineers on January 27, 1977. It contained two recommendations with which Brown had complied. The other report was made by Schirmer Engineering Corporation on February 11, 1977, and contained fifteen recommended changes to be made by Brown. Along with the Schirmer report, Wisenberg sent to Shoultz a written reply by Marvin McDaniel, Maintenance Supervisor at Houston Wiper & Mill Supply Company, stating which of the recommendations had or had not been complied with and which of the recommendations would not be complied with "at this time." In so doing, Wisenberg clearly indicated that Brown would not convert his sprinkler system from a wet to a dry system [1] "at this time." The Schirmer report also explicitly stated that Brown drained his sprinkler system when freezing weather was predicted.[2]

Brown drained his system on February 20, 1978, because freezing weather was predicted. Early in the morning of February 21, 1978, a fire occurred in the building with the wet sprinkler system. No alarm sounded. That building was destroyed.

Initially, all seven of Brown's carriers agreed to accept proof of loss on his claim. However, Bellefonte changed its position in May 1978, after James T. Gannon, Property Department Manager of Armco Underwriters Agency of Texas, Inc., reviewed Shoultz's notes of a January 16, 1978, telephone conversation between Shoultz and Wisenberg concerning the question of outstanding engineering recommendations. Although Gannon and Shoultz worked in the same building and saw each other several times each week, Gannon never asked Shoultz what his notes [3] actually meant. Rather, Gannon interpreted the notes to mean that all of the Schirmer recommendations had been complied with and erroneously decided that Wisenberg had misrepresented the risk to Bellefonte. Thus, on May 25, 1978, Bellefonte revoked its acceptance of Brown's proof of loss and Gannon sent a telex to Lloyds of London, a co-insurer, stating Bellefonte's new position. A copy of this telex was sent to Market Insurance Company, another carrier on the Brown risk. This telex prompted Wisenberg's cross-action against Bellefonte for libel and Brown's claim of tortious interference with contract. The telex, with emphasis added, reads:

RE: HOUSTON WIPER AND MILL SUPPLY CLAIM FEB 21 CIRT NO 1165 EFF THRU DELTA SPECIAL RISK WE PARTICIPATE 200,000 P/O 650,000 BLDG WITH LLOYDS AND HAVE 150,000 P/O 700,000 M & E WITH FIVE COMPANIES INCLDING MARKET WHICH HAS 250,000 STOP OUR COVER INCEPTED JAN 17, 1978 AND *RISK PRESENTED TO US AS HEATED WITH WET SYSTEM MAIN BLDG DRY SYSTEM ON DOCKS AND UNHEATED WHSE STOP NOW INFORMED PROCESSING BLDG NOT HEATED SUFFICIENT TO PREVENT FREEZING AS [sic] AND INSURED ON SEVERAL OCCASIONS NOTIFIED WISENBERG HIS BROKER OF SHUT OFF AS SYSTEM BUT WISENBERG*

---

1. A wet sprinkler system has water in the pipes at all times, unless it is drained. However, a dry system has air in the pipes until the system is triggered. Water then enters the pipes.

2. On the long-standing recommendation of Wisenberg, Brown drained his wet system when freezing weather was officially forecast in order to prevent the sprinkler pipes from rupturing. Brown had followed this procedure approximately four to five times per year for the last twenty-five years. When Brown

planned to drain his system, he notified Wisenberg's office and McCane-Sondock Protection Systems (alarm company) of his intentions. Wisenberg made a note of such notices and McCane-Sondock disconnected the alarm system.

3. The notes contained the words "Inspection is good. Schirmer report to be furnished. No recs."

*NEVER NOTIFIED UNDERWRITERS* STOP WISENBERG APPEARS TO BE AGENT FOR TWO OF SIX M & E COS BUT IS NOT AGENT FOR OTHERS INCLUDING BELLEFONTE UNDS AS NONADMITTED IN TEXAS STOP *WE LEAN TO POSITION OF DECLINING CLAIM ON BASIS AS SYSTEM FACTS NOT AS PRESENTED* PLUS WE WERE NEVER ADVISED OF SHUT DOWN AND THEREBY DENIED OPPORTUNITY TO REQUIRE ON PREMISES WATCHMAN BE POSTED WHICH WE WOULD HAVE DONE STOP *MARKET INS CO SUPPORTS OUR CONTENTION AND WE EXPECT WE CAN GET GREAT SOUTHWEST AND NORTHEASTERN FIRE TO FOLLOW STOP WE SOLICIT YR CONCURRANCE [sic] WITH OUR POSITION* AND REQUEST YOU DISCUSS WITH PAT HALL SYNDICATE WHICH WE UNDERSTAND IS LEADER.

J.T. GANNON

9103614353

ARMCO UN A DAL

Despite Bellefonte's obvious suggestion that the insurance companies join together in order to exert group economic pressure against Brown, thus strengthening Bellefonte's bargaining position, each of the other six insurance carriers eventually paid their portion of Brown's claim.

Bellefonte, through its Claims Manager, Kenneth Weiland, denied the claim, alleging that Wisenberg misrepresented the risk of Brown's business by stating that all of the Schirmer Engineering Corporation recommendations had been complied with, that Brown violated the Automatic Sprinkler Clause[4] of the policy and that Brown affirmatively caused a material increase in the hazard which was within his knowledge and control.

## WISENBERG'S APPEAL

In his first point of error, Wisenberg alleges the trial court erred in allowing Brown and Bellefonte to use the alleged misrepresentation by Wisenberg as a policy defense in violation of prohibitions contained in TEX.INS.CODE ANN. art. 21.35 (Vernon 1981). Wisenberg contends there was a collusive arrangement between Brown and Bellefonte calculated to recover treble damages from Wisenberg through the Texas Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. § 17.46 (Vernon Supp.1982–1983). However, the jury, in its answer to Special Issue seventeen, exonerated Wisenberg of any deceptive trade practice. The jury further found, in its answer to Special Issue twenty-five, that Wisenberg and Delta Special Risks properly fulfilled their duties to Bellefonte. We find no evidence of collusion, and no damages are claimed as a result of any alleged collusion. Wisenberg's first point of error is overruled.

In his second, third and fourth points of error, Wisenberg contends that error was committed in rendering judgment against him in the amount of $34,992.00 because there was no jury verdict on the quantum of damages, the evidence as to the amount of recovery for replacement cost was not conclusively established and Brown waived his claim against Wisenberg as a matter of law. In answer to Special Issues 8(1) and 9(1), the jury found that Wisenberg was negligent in failing to include Replacement Cost Endorsement Form 164 and that such failure was a proximate cause of Brown's losses.

---

4. The clause in question reads:
 "Automatic Sprinkler Clause No. 1
 (With Central Station supervisory service)
 \* \* \* \* \* \*
 This policy being written at a reduced rate, based on the protection of the premises by automatic sprinkler, it is a condition of this policy that, in so far as the sprinkler equipment and the water supplies therefor, and in connection therewith the approved Central Station sprinkler supervisory service complete, are under the control of the assured, due diligence shall be used by the assured to maintain them in complete working order, and that, on the premises of assured, no change shall be made in said water supplies and/or the Central Station sprinkler supervisory service complete without the consent of this company in writing. Prescribed by the State Board of Insurance."

Wisenberg contends that Brown is not entitled to any recovery since Brown failed to request a damage issue. Further, having objected to the omission of this issue, Wisenberg argues that there can be no presumed finding or actual finding by the trial court on the quantum of damages. Wisenberg's arguments would be sound had the amount of damages been disputed. In this case, there was no necessity for the submission of a damage issue. *See Commercial Insurance Co. v. Smith,* 596 S.W.2d 661, 664–65 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). Wisenberg's undisputed testimony established that the total damage to Brown, resulting from the failure to include Replacement Cost Endorsement Form 164, was $34,992.00. Since the amount of damages was conclusively established, points of error two, three and four are overruled.

In his fifth, sixth, seventh and eighth points of error, Wisenberg alleges the trial court erred in failing to hold that, by accepting the premiums for the Replacement Cost Endorsement, Bellefonte became obligated to attach the endorsement and was estopped from denying liability for losses to Brown due to the omission of the form. Further, Wisenberg alleges the trial court erred in failing to hold that Wisenberg was entitled to indemnity from Bellefonte for any adverse judgment due to the omission of the form. Also, he contends the trial court erred in failing to disregard the jury's determination that Bellefonte's failure to include the Replacement Cost Endorsement was not a proximate cause of his injury.

■ The issue in these four points of error is Bellefonte's liability to Wisenberg for failure to include the Replacement Cost Endorsement. Later in this opinion, in considering Bellefonte's points of error, we hold that Wisenberg was an agent of Bellefonte. It is an established rule of law that an agent is entitled to reimbursement from his principal for the amount of expenditures or losses resulting proximately or necessarily from the good faith execution of the principal's contract. *First National Bank v. H. Hentz & Co.,* 498 S.W.2d 478, 482 (Tex. Civ.App.—Waco 1973, no writ). Further,

an agent who, in the performance of his duties for his principal, incurs liability for an act not morally wrong, may have indemnity from his principal. *Modine Manufacturing Co. v. North East Independent School District,* 503 S.W.2d 833, 845 (Tex. Civ.App.—Beaumont 1973, writ ref'd n.r.e.). *See also* 3 TEX.JUR.3d *Agency* (1980). The record in the instant case reveals that Bellefonte actually received full payment for the Replacement Cost Endorsement, and the jury found that Wisenberg properly fulfilled his duties to Bellefonte. Therefore, as between principal and agent, Wisenberg is entitled to indemnity from Bellefonte. We sustain Wisenberg's points of error six and eight, and in doing so, we reverse and render judgment in favor of Wisenberg against Bellefonte in the sum of $34,992.00. Since points six and eight have been sustained, it is unnecessary for us to pass on points of error five and seven.

### BELLEFONTE'S APPEAL AGAINST BROWN

In its first six points of error, Bellefonte contends the trial court erred in rendering judgment for any punitive damages because the jury's findings to Special Issues ten through fifteen were not sufficient to establish liability for punitive damages; such damages are not recoverable where the contracts allegedly interfered with were not breached; there was no evidence that the contracts were breached; there was no evidence of actual damage to Brown as a result of any such alleged interference; no punitive damages are recoverable in breach of contract actions and, in this case, no separate independent tort was pleaded or proved and the instruction accompanying Special Issue fifteen, awarding punitive damages, did not submit the legal test which would authorize the recovery of punitive damages.

In answering Special Issues ten through fifteen, the jury found that Gannon, while acting in the course and scope of his employment for Bellefonte, sent a telex to Lloyds of London and the other insurance companies which provided Brown's coverage;

Gannon sent the telex in an attempt to influence the other insurance companies to refuse to pay Brown's claims; the telex was sent with the intent to injure Brown in his contractual relationships with the other participating insurance companies; the telex contained material misrepresentations injurious to Brown's property rights in his insurance contracts with the other insurance companies; the untrue representations by Bellefonte were willfully and maliciously made, or were made in reckless disregard of the rights of Brown and one million dollars ($1,000,000.00) punitive damages should be awarded to Brown by Bellefonte.

The general rule is that a valid contract must exist in order to maintain an action for tortious interference with a contract. Specifically, four points must be established: (1) that a contract subject to interference existed; (2) the act of interference was willful and. intentional; (3) the intentional act was a proximate cause of the plaintiff's damages; and (4) actual damages or loss occurred. *Armendariz v. Mora,* 553 S.W.2d 400, 404 (Tex.Civ.App.— El Paso 1977, writ ref'd n.r.e.). With regard to actual damages, interference with contractual relations encompasses not only the actual inducement or procurement of a breach of contract, but *all* invasions of contractual relations, including any act which retards, makes more difficult or prevents performance. *Tippett v. Hart,* 497 ,S.W.2d 606, 610 (Tex.Civ.App.—Amarillo), *writ ref'd n.r.e.,* 501 S.W.2d 874 (Tex.1973). Once a prima facie case of contractual interference is established, the defendant may defeat the action only by showing that his act was either justified or privileged. *Armendariz,* 553 S.W.2d at 405. Exemplary damages are recoverable if the interference was malicious. *Id.* at 407.

In the present case, the record reflects that Brown contracted with several insurance companies for coverage; Bellefonte willfully and intentionally sent a telex to Lloyds of London soliciting their concurrence in a scheme to deny Brown's claims on his insurance contracts; Bellefonte's telex was a proximate cause of Brown's damages; and, Brown suffered actual damages because the telex caused at least one insurance company to refuse to pay his claim within the period designated in the policy, thus unnecessarily delaying the payment of funds necessary for the restart of his business. Brown was forced to sell personal property and to raise the necessary funds by other means. Further, in answering Special Issue fourteen, the jury found that the telex was either maliciously sent or sent in reckless disregard of Brown's rights. Brown clearly established a prima facie case of a willful and tortious interference with contract by Bellefonte and damages proximately caused thereby, thus laying the predicate for the recovery of punitive damages.

The burden then shifted to Bellefonte to prove that its action in sending the telex was either justified or privileged. Bellefonte cites authority for the proposition that interference with contractual relations is privileged where it results from the exercise of a party's own rights or where the party possesses an equal or superior interest to that of the plaintiff in the subject matter. Additionally, Bellefonte points out that all witnesses with insurance expertise testified that such communications were routine in such losses. Neither point justifies the action of Bellefonte. A qualified privilege comprehends communications made in good faith on subject matter in which the author has an interest or with reference to which he owes a duty to perform to another person having a corresponding interest or duty. The privilege is lost if the communication is made with malice or lack of good faith. *Houston v. Grocers Supply Co.,* 625 S.W.2d 798 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ). The language used in the telex in the case at bar clearly constitutes a bad faith message calculated to injure Brown.

Insurance companies have the right to exchange information; however, they do not have the right to solicit a conspiracy to deny a claim. The jury specifically found in Special Issue fourteen that the telex was maliciously composed and sent, and that

Bellefonte's action was neither justified nor privileged.

■ Bellefonte has failed to rebut Brown's prima facie case for tortious interference with Brown's contractual relations. The telex tortiously interfered with Brown's contractual rights with his other insurance companies by making the policies more difficult and expensive to fulfill. Bellefonte's points of error one, two, three and four are overruled.

In point of error five, Bellefonte alleges that no separate tort, independent from the breach of contract, was pleaded or proven. However, Brown did specifically plead this in his Third Amended Original Petition, Paragraph VIII, and at trial the telex (proof of the tort) was admitted into evidence. Since a separate, independent tort was properly pleaded and proven, Bellefonte's point of error five is overruled.

■ In point of error six, Bellefonte attacks the judgment for punitive damages on the ground that Special Issue fifteen and its accompanying instruction, do not submit the legal test authorizing a recovery of punitive damages. Special Issue fifteen asked the jury to set the amount of punitive damages, if any, to be awarded. The instruction immediately preceding stated in part that punitive damages, if any, should be awarded solely as a punishment for a wrong intentionally inflicted, or for grossly negligent acts or omissions, if any, and had to be reasonably proportional to the actual damages sustained, if any were sustained. Additionally, it defined "actual damages" or "adverse effect" as any type of expense, loss or injury for which Brown could be compensated by an award of money.

In its brief, Bellefonte complains that the charge does not inquire whether Bellefonte was grossly negligent, fails to instruct the jury on the legal standards of gross negligence, that the trial court erred in instructing that punitive damages had to be reasonably proportional to actual damages sustained since no Special Issue on actual damages was submitted and that the instruction commented on the weight of the evidence

by referring to the "actual damages" suffered and the "adverse effect" on Brown. However, in its Bill of Exceptions and Objections to the Charge, Bellefonte objected that "[t]he instruction [re: gross negligence] gives a totally incorrect legal test." Furthermore, Bellefonte neglected to object to the failure to submit a Special Issue on actual damages, and merely alleged that, "[t]he instruction is improperly placed in the charge . . . [and] [i]t gives undue emphasis and becomes a comment on the weight of the evidence."

These "objections" are totally inadequate to preserve error, if any, for review. Texas Rule of Civil Procedure 274 requires that a party *distinctly* point out the matter to which he objects. "Any complaint as to an instruction, issue, definition or explanatory instruction, on account of any defect, omission, or fault in pleading, shall be deemed waived unless *specifically* included in the objections" (emphasis added). Likewise, TEX.R.CIV.P. Rule 272 declares that a party waives any complaint concerning an omitted issue unless the complaint was specifically included in the party's objections. These rules are dispositive. Thus, Bellefonte waived these arguments. *See Whitson Co. v. Bluff Creek Oil Co.*, 156 Tex. 139, 293 S.W.2d 488 (1956); *Brazos Electric Power Cooperative, Inc. v. Taylor*, 576 S.W.2d 117 (Tex.Civ.App.— Waco 1978, writ ref'd n.r.e.); *Osteen v. Crumpton*, 519 S.W.2d 263 (Tex.Civ.App.— Dallas 1975, writ ref'd).

Here and throughout its brief, Bellefonte has repeatedly failed to meet either the requirements or the spirit of Rules 272 and 274 by clogging its Exceptions and Objections to the Charge with non-meritorious, overused and inapplicable stock objections. Error, if any, has been waived, and point of error six is overruled.

■ In points of error nineteen through twenty-five, Bellefonte alleges that the trial court erred in entering judgment for Brown for attorney's fees. In points nineteen and twenty, Bellefonte claims attorney's fees are not recoverable under any liability theory pleaded, that no attorney's fees are recoverable for prosecuting a claim

under a property insurance policy and that Brown failed to plead the applicable statute. We disagree and hold that Brown is entitled to attorney's fees under TEX.REV. CIV.STAT.ANN. art. 2226 (Vernon Supp. 1982–1983). At first glance, this article appears to preclude an award to Brown of attorney's fees. However, we agree with the reasoning of two other courts of appeal that article 2226 precludes attorney's fees only if the plaintiff has other statutory access to attorney's fees.[5] *See Texas Farmers Insurance Co. v. Hernandez,* 649 S.W.2d 121, 124 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.); *Prudential Insurance Co. v. Burke,* 614 S.W.2d 847, 850 (Tex.Civ.App.—Texarkana), *writ ref'd n.r.e.,* 621 S.W.2d 596 (Tex.1981) (per curiam). Brown does not have alternative remedies; thus, article 2226 applies.

Our holding does not conflict with a prior determination of this issue by this court. In *Standard Fire Insurance Co. v. Fraiman,* 588 S.W.2d 681 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.), this court refused to grant attorney's fees under article 2226 because the cause of action fell under TEX.INS.CODE ANN. art. 21.21–2, § 7 (Vernon 1981). Attorney's fees were not awarded under article 21.21–2 because no jury issue was submitted. Our case differs. Article 21.21–2 is inapplicable to the case at bar because none of Brown's allegations fall under section two, which outlines practices this article prohibits. Thus, article 2226 applies. Further, attorney's fees were awarded by the jury in Special Issue twenty-two.

 Finally, the trial court did not err in awarding attorney's fees although Brown failed to plead the applicable statute. Texas law unquestionably holds that a plaintiff need only plead facts which, if true, entitle him to the relief sought. Tex-as does not require a plaintiff to specifically plead case authority or statutes to receive that relief. *See Colbert v. Dallas Joint Stock Land Bank,* 129 Tex. 235, 102 S.W.2d 1031, 1033 (1937). Moreover, pleading an incorrect or inapplicable theory or statute, as was done here, does not preclude an award. *National Bank v. Texas Investment Co.,* 74 Tex. 421, 12 S.W. 101, 103 (1889). Points of error nineteen and twenty are overruled.

In point of error twenty-one, Bellefonte alleges that the trial court erred in entering judgment for Brown's attorney's fees because attorney's fees for lost past and future profits are not recoverable absent proof of independent tortious conduct. Alternatively, Bellefonte argues in point twenty-five that Special Issue twenty-two fails to segregate the recovery awarded for the breach of the insurance policy and the recovery awarded for lost past and future profits. Despite Bellefonte's suggestions to the contrary, we find the jury awarded attorney's fees for Bellefonte's breach of contract, tortious interference with other insurance contracts and the resulting actual and punitive damages. The jury awarded no damages which were specifically designated for lost past and future profits. Thus, we find that the entire amount of legal expenses awarded was incurred in connection with the prosecution of Brown's main causes of action against Bellefonte. Consequently, points of error twenty-one and twenty-five are overruled.

 Points of error twenty-two, twenty-three and twenty-four state, respectively, that the proof supporting the judgment awarding Brown attorney's fees was fatally defective, that Special Issue twenty-two did not submit the "proper legal test" authorizing recovery of attorney's fees and that there was no evidence of probative

---

**5.** "The provisions hereof shall not apply to contracts of insurers issued by insurers subject to the provisions of the Unfair Claim Settlement Practices Act (Article 21.21–2, Insurance Code), nor shall it apply to contracts of any insurer subject to the provisions of Article 3.62, Insurance Code, or to Chapter 387, Acts of the 55th Legislature, Regular Session, 1957, as amended (Article 3.62–1, Vernon's Texas Insurance Code), or to Article 21.21, Insurance Code, as amended, or to Chapter 9, Insurance Code, as amended, and each such article or chapter shall be and remain in full force effect. This Act shall be liberally construed to promote its underlying purposes."

force and no special issue establishing that the fees were "reasonable and necessary in Harris County, Texas." However, Bellefonte failed to provide argument and authority and the errors, if any, are waived. *Nolan v. Bettis,* 577 S.W.2d 551, 556 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.); TEX.R.CIV.P. 418(e). Bellefonte also alleges that Special Issue twenty-two contains a comment on the weight of the evidence. However, Bellefonte does not identify the comment or demonstrate how it damages its position. As a result, its allegation presents nothing for review. *Terry v. Buttercup Oil Corp.,* 487 S.W.2d 169 (Tex.Civ. App.—San Antonio 1972, writ ref'd n.r.e.). Points of error twenty-two, twenty-three and twenty-four are overruled.

▪ In points of error forty-one and forty-three, Bellefonte contends that the jury's response to Special Issue forty-one, that the fire hazard was not increased at or before the fire by acts or omissions within the knowledge and control of Houston Wiper & Mill Supply Company, was incorrect as a matter of law and was against the great weight and preponderance of the evidence.

> In reviewing the no evidence point, this court must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). If there is evidence to support the judgment, we must review the insufficient evidence point, weighing all evidence to ascertain if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951) (per curiam).

*Associated Milk Producers v. Nelson,* 624 S.W.2d 920, 925–26 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). A review of the evidence introduced at trial, according to these standards, reveals extensive support for the jury's findings. Points of error forty-one and forty-three are overruled.

In asserting these points of error, Bellefonte is attempting to place Brown between a rock and a hard place. Bellefonte (Gannon) first testified that Brown increased the risk of fire hazard by disengaging the sprinkler system and thus violated the increase of hazard clause in the policy. However, Gannon then candidly admits that if Brown had not drained the system, the pipes would have frozen and burst, and Bellefonte then would have considered denying the claim *on the same basis;* i.e., Brown violated the increase of hazard clause. Thus, in Bellefonte's opinion, either decision would have caused Brown to violate the clause. We find no violation. Brown's decision to disengage the system was especially prudent in light of his duty under Automatic Sprinkler Clause 1, *supra,* to maintain the system in working order; a duty which necessarily included protecting the pipes from rupturing. The record contains compelling evidence which supports the jury's findings of no increase in hazard. Bellefonte's points of error forty-one and forty-three are overruled.

Alternatively, Bellefonte alleges in point of error forty-two, that the explanatory instruction concerning the term "increase of hazard" instructed the jury on a matter of law and constituted an impermissible, prejudicial comment on the weight of the evidence. Point of error forty-seven states that the jury's finding that Brown exercised due diligence is immaterial and should be disregarded. In its argument under point forty-two, Bellefonte adds two new allegations: that the instruction unnecessarily readvised the jury that Bellefonte had the burden of proof, and that the instruction failed to advise the jury with what they were to compare the conditions existing at the time the policy was written.

▪ Bellefonte has failed to brief or present authority for point of error forty-seven and thus waives it. TEX.R.CIV.P. 418(e). TEX.R.CIV.P. 272 precludes this court from considering the two embellishments on point of error forty-two as they were not included in Bellefonte's Objections and Exceptions to the Charge. Further, TEX.R.CIV.P. 277 states that the inclusion of definitions in the court's charge to the

jury is within the discretion of the trial judge. Where the explanatory instruction is of a legal or technical term, it must be included. *Union Oil Co. v. Richard,* 536 S.W.2d 955, 957–58 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). Since we find the term "increase of hazard" is a technical term, the trial judge was correct to include the explanatory instruction in the jury charge. Points of error forty-two and forty-seven are overruled.

Points of error forty-four through forty-eight argue that Brown failed to exercise due diligence in maintaining the sprinkler system and that this failure breached Automatic Sprinkler Clause No. 1, *supra,* and thereby heightened the serious nature of the fire. We disagree.

In point of error forty-four, Bellefonte alleges that Brown breached Automatic Sprinkler Clause No. 1 and argues in its brief that the clause, which conforms to a standard form prescribed by the Texas State Board of Insurance, is routinely included in fire policies on sprinklered risks, and is not ambiguous.

As a general rule, a contract is found to be ambiguous if its meaning is uncertain and doubtful, or if it is subject to more than one reasonable meaning and such conflict may not be resolved by rules of interpretation. *Skyland Developers, Inc. v. Sky Harbor Associates,* 586 S.W.2d 564, 568 (Tex.Civ.App.—Corpus Christi 1979, no writ). Any doubts as to the meaning of the language in the instrument must be resolved against the party who prepared the instrument. *Bethel v. Butler Drilling Co.,* 635 S.W.2d 834, 838 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.). This rule is especially applicable where the agreement provides for exemption from liability in favor of the draftee of the contract. *General Corrosion Services Corp. v. "K" Way Equipment Co.,* 631 S.W.2d 578, 580 (Tex.App.—Tyler 1982, no writ). In this case, discrepancies in Gannon's (Bellefonte's) testimony illustrate the ambiguity concerning the meaning of the phrase, "due diligence shall be used by the assured to maintain [the sprinkler system] in complete

working order." Brown was obligated under Automatic Sprinkler Clause No. 1 to maintain the system in working order. This meant Brown had to leave water in the pipes to keep the system in "working order" in the event of a fire; however, he also had to drain the water from the system in freezing weather to prevent rupture of the pipes, thus keeping the system in "working order" Brown was "damned if he did and damned if he didn't" to compound the confusion, Shoultz, another Bellefonte representative, testified it was reasonable for an assured, such as Brown, to turn off the system in freezing weather to minimize the likelihood of damage. Considering this testimony, which clearly illuminated the ambiguity in the clause, the jury properly found that Brown used due diligence to keep the system in working order.

This holding does not conflict with the jury's finding that a change in the water supply did occur. The clause was intended to require Brown to obtain written consent from Bellefonte before changing the water supply only *in the event that Brown changed the water supply in a way that Bellefonte was not aware of.* We find that no "change" occurred which activated this clause. Bellefonte had a copy of the Schirmer report at least one month in advance of the fire. Consequently, it was well aware that Brown intended to continue to conform to what amounted to standard operating procedure in his warehouse; if freezing weather was predicted, he turned off the water supply to the wet sprinkler system. Point of error forty-four is overruled.

Next, Bellefonte alleges that the jury's finding that the changes in the sprinkler system and the Central Station supervisory service did not contribute to the serious nature of the fire were against the great weight and preponderance of the evidence. The record does not support this contention. A chemist testified that had the sprinkler system remained filled with water, the pipes would have frozen and burst, leaving it inoperative. All of the fire damage which occurred would have oc-

curred whether or not the system had been drained. Consequently, we overrule point of error forty-five.

In points of error forty-six and forty-eight, Bellefonte complains of the instructions accompanying Special Issue twenty-one, finding that Brown exercised due diligence in maintaining the system, alleging that the instructions were incorrect submissions of Bellefonte's policy defense, were not required, incorrectly instructed the jury on a matter of law and commented on the weight of the evidence. We disagree.

The instructions stated that Brown could delegate his duty to maintain the system without suffering the consequences of a failure to do so by the delegatee and that any ambiguities in the policy were to be strictly construed against the drafter of the policy. Bellefonte fails to cite any authority identifying the correct instruction as required by TEX.R.CIV.P. 418(e). As previously explained, the trial judge exercises discretion when drawing the charge, and he may include instructions which aid and assist the jury in its deliberations. TEX.R.CIV.P. 277. We do not find an abuse of discretion and points of error forty-six and forty-eight are overruled.

Point of error forty-nine argues that no evidence supports the jury's finding that Bellefonte waived its right to give written consent to shutting off the system. The test developed in *Associated Milk Producers v. Nelson, supra,* compels us to hold otherwise.

Wisenberg was Bellefonte's agent and on January 16 bound Brown's risk with an effective date of January 17. On January 19, Wisenberg sent Bellefonte a copy of the Schirmer report which recommended that Brown convert his wet sprinkler system to a dry system. Brown's reply that he would not comply "at this time," was clearly indicated. Enclosed with the report was information explaining Brown's practice of draining the system when freezing weather was predicted. On February 20, Brown notified Wisenberg that he planned to drain the system in anticipation of freezing weather. The fire occurred early the next

morning. On that same day, Wisenberg told General Adjustment Bureau's (G.A.B.) investigator that the sprinkler system had been drained. On February 23, Wisenberg gave written confirmation to G.A.B. that the system had been drained at the time of the fire. On March 3, G.A.B. sent its first report to Brown's insurers, including Bellefonte. Page two of that report stated that the system had been drained the night of the fire. Bellefonte delivered Brown's policy to Wisenberg that same day. Some time *after* March 3, Bellefonte billed Brown for the premium and promptly received payment.

The evidence undisputedly establishes that Bellefonte knew at least one month before the fire of Brown's intention to drain the system if freezing weather was predicted; that G.A.B., another agent of Bellefonte, knew *on the day of the fire* that the system had been drained, and that on March 3, G.A.B. sent a written report containing this information to Bellefonte. Despite this knowledge, Bellefonte nevertheless chose to deliver Brown's policy and to accept the premium payment after the loss. Having taken that action, Bellefonte may not now assert that Brown breached the Automatic Sprinkler System Clause. First, Bellefonte is estopped from denying the claim because it gained at least constructive knowledge of Brown's standard operating procedure when freezing weather was predicted from the Schirmer report.

> Where a person, ... with *constructive knowledge* of the facts, induces another by his words or conduct to believe that he acquiesces in or ratifies a transaction, ... and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice.

*Houston General Insurance Co. v. Lane Wood Industries, Inc.,* 571 S.W.2d 384, 389 (Tex.Civ.App.—Fort Worth 1978, no writ) (cites omitted) (emphasis in original). Second, even if Bellefonte were not estopped from denying the claim, the jury correctly determined that it waived its position by delivering the policy and accepting

premiums with the belief that Brown violated the clause.

> To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then insist upon these facts as a ground of avoidance, is . . . 'to attempt a fraud. . . . Such [an issue] is tantamount to an assertion that the policy [is] valid at the time of delivery, and is a waiver of the known ground of invalidity.'

*Commercial Casualty Insurance Co. v. Hamrick,* 60 S.W.2d 247, 250 (Tex.Civ.App.— Dallas 1933), *aff'd,* 127 Tex. 403, 94 S.W.2d 421 (1936). Point of error forty-nine is overruled.

▮ In point of error fifty, Bellefonte alleges that the jury's response to the waiver issue is immaterial because it incorrectly submits Bellefonte's Automatic Sprinkler Clause defense. Special Issue twenty-three states:

> Do you find from a preponderance of the evidence that Defendant BELLEFONTE UNDERWRITERS INSURANCE COMPANY waived its right to written notice and consent to the shutting off of the wet sprinkler system on or about Feb. 20, 1978?

Bellefonte complains that the Special Issue refers to a right to written notice and consent while the clause mentions only a right to written consent. We agree that a discrepancy between the issue and the clause exists. However, Bellefonte failed to show how this error harmed its case. If anything, it placed a greater burden on Brown. Since harmless error does not lead to reversal, we overrule point of error fifty. *See Texas Power & Light Co. v. Hering,* 148 Tex. 350, 224 S.W.2d 191 (1949); TEX.R. CIV.P. 434.

▮ Point of error fifty-one complains that the instruction defining the word "waived" contains inconsistent statements. We find no error in the definition which states:

> You are instructed 'waived' as used in this charge is mean [sic]: To relinquish intentionally a known right or intentionally do an act or acts inconsistent with claiming it. Waiver may not be intended

in fact, but may arise from the acts of the party [charged with it, here Bellefonte Underwriters Insurance Company].

This definition is strikingly similar to that approved in *Brightwell v. Norris,* 242 S.W.2d 201, 204 (Tex.Civ.App.—Waco 1951, writ ref'd n.r.e.): "Waiver is generally said to be the intentional relinquishment of a known right *or such conduct as to warrant an inference to that effect.*" (emphasis added). The definition given in this charge accurately conveys the principle that a party may intentionally do an act without the specific intent to waive a right, however, because the act is inconsistent with the retention of the right, waiver may be inferred.

▮ The remaining objections to the instruction state that it instructs the jury on a matter of law and comments on the weight of the evidence. Bellefonte has waived these points by failing to mention the arguments in its objections to the charge. TEX.R.CIV.P. 272. Point of error fifty-one is overruled.

In points of error fifty-two, fifty-three and fifty-four, Bellefonte contends that the finding that Bellefonte ratified Wisenberg's acts is immaterial, supported by no evidence and against the great weight and preponderance of the evidence. Points fifty-five and fifty-six continue, stating that the ratification issue was vague and global and that the instruction which followed it was unnecessary, instructed the jury on a matter of law and was a comment on the weight of the evidence. All of these points are overruled.

▮ In point fifty-two Bellefonte argues that it was legally required to accept the premiums and to issue the policy, regardless of the fire loss, and that those acts thus could not constitute ratification of Wisenberg's actions. Bellefonte fails to present any legal authority substantiating this position and thus waives it. *Nolan v. Bettis, supra;* TEX.R.CIV.P. 418(e). We disagree with the no evidence and the great weight points presented in points fifty-three and fifty-four, too. In Special Issue

twenty-four, the jury found that Bellefonte ratified the acts of Wisenberg because it accepted payment in full for the policy which was bound on January 16, 1978, after March 3 and after the fire, which occurred on February 21, 1978; delivered its policy on March 3, 1978, despite receipt of the Schirmer Engineering report on January 19, 1978; and delivered its policy after it had knowledge that the fire occurred and that Brown had drained his wet sprinkler system on the night before the fire. This undisputed evidence amply supports the jury's finding of ratification.

Bellefonte's arguments in its brief on these points are not substantiated by legal authority. Bellefonte cites *Trice v. Georgia Home Insurance Co.*, 81 S.W.2d 1055, 1058 (Tex.Civ.App.—Amarillo 1935, no writ), for the proposition that a principal cannot ratify acts of its agent without having full knowledge of all the material facts and circumstances relating to the act at the time of ratification. This case, as well as others cited by Bellefonte, refers to the situation where the agent himself has been deceived as to the material facts upon which the policy issued. This authority could govern if Brown had misrepresented or not disclosed material facts to Wisenberg. This, however, was not the case. Thus, Wisenberg's knowledge of the material facts was imputed to his principal, Bellefonte. Additionally, Bellefonte had actual possession of the Schirmer report well before the fire and was informed by G.A.B. that the sprinkler system was not operable the night of the fire. We find substantial evidence supporting the jury's finding that Bellefonte's decision to deliver the policy and accept payment of the premium after acquiring this knowledge constituted ratification of all acts by Wisenberg.

We hold that the finding of ratification is not dependent upon the finding that Wisenberg was Bellefonte's agent. As *Bankers Protective Life Insurance Co. v. Addison*, 237 S.W.2d 694, 697 (Tex.Civ.App. —Amarillo 1951, no writ) (emphasis added), points out, "[u]nauthorized acts of an agent, *or one purported to be an agent,* may be ratified by a principal even by implication provided such is done with full knowledge of all material facts surrounding the unauthorized transaction in question." Thus, Bellefonte's possession of reports which clearly detailed Brown's action constituted the "full knowledge of all material facts" necessary for Brown to establish ratification by Bellefonte of his acts. Points of error fifty-three and fifty-four are overruled.

Bellefonte has again resorted to stock objections in points fifty-five and fifty-six. In its brief, Bellefonte presented no argument or no authority for the points. Bellefonte merely presented several arguments contained in a single sentence: "[t]he immateriality of Special Issue 24 is further buttressed by the fact that the instruction following the issue does not correctly instruct the jury on the legal requirement of ratification and, once again, the instruction comments on the weight of the evidence." Once again, we resort to TEX.R.CIV.P. 418(e) for authority to overrule points of error fifty-five and fifty-six.

In point of error fifty-seven, Bellefonte alleges that there is no evidence to support the judgment against Armco, Inc. and Armco Underwriters Agency. We will review the evidence according to the "no evidence" standard, in the light most favorable to the verdict.

The record establishes that Brown agrees that judgment should not have been entered against Armco, Inc., but maintains his claim against Armco Underwriters Agency, an insurance company which is part of the Bellefonte group involved in this case. Since Shoultz was an employee of Armco Underwriters Agency, we affirm the judgment against it. Bellefonte's point of error fifty-seven is sustained in part, absolving Armco, Inc. of any liability in this case, and denied in part, sustaining the judgment against Armco Underwriters Agency.

In points of error fifty-eight and sixty-one, Bellefonte alleges that the trial court erred in admitting evidence concerning the custom and practice in the Houston insurance industry of posting a watchman when

a sprinkler system is shut down to avoid freezing and ambiguity in the insurance contract. We disagree.

The determination of whether a clause in a contract is ambiguous is a question of law which the court should decide. *Republic National Life Insurance Co. v. Spillars,* 368 S.W.2d 92 (Tex.1963). This decision cannot be made in a vacuum; evidence must be presented upon which the judge can base his decision. "The general rule is that any evidence which is relevant as bearing upon the sense which should be attached to the written words is admissible." 2 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL, § 1687 (Texas Practice 3d ed. 1980). Bellefonte argues in its brief that since this issue is a question of law on which the trial judge never ruled, the judge erred in admitting evidence of ambiguity. Bellefonte has waived this argument, though, because it failed to object on this ground in its Exceptions and Objections to the Court's Charge. TEX.R.CIV.P. 272. Evidence of the industry's custom (or more accurately, lack of custom) of posting a watchman, was not erroneously admitted because "[I]f it appears that the custom or usage is such that the writing might well have been made in contemplation of the custom and with the expectation that the custom would be used to supplement its terms the latter is admissible." 2 R. RAY, *supra* § 1651. Points of error fifty-eight and sixty-one are overruled.

In point of error fifty-nine, Bellefonte alleges that the trial court erred in admitting evidence concerning the Danzinger policy, a fire insurance policy issued by Bellefonte for another unheated building protected only by a wet sprinkler system, in July 1977, six months prior to issuing Brown's policy. We find no error.

The habit or custom of a person in doing a particular act often has probative value in determining his conduct on an occasion in question—the admissibility of such evidence is universally conceded.

This (proof of habit or custom) is usually accomplished by direct testimony of persons having a personal knowledge of it, stating that such is the habit, custom or course of business as they have observed it. But it should also be provable by evidence of specific instances of conduct from which the general habit or custom may be inferred.

*Id.* at §§ 1511, 1515. Evidence concerning the Danzinger fire policy was offered for impeachment purposes. During the trial, Gannon (Bellefonte) testified that had he known that Brown wanted coverage for an unheated building with a wet sprinkler system, he would not have issued the policy and that if he had issued it, he would have required a watchman on nights the system was deactivated. Testimony regarding the Danzinger policy contradicted Gannon's proclamations and corroborated Wisenberg's testimony to the same effect. The court correctly admitted evidence of the Danzinger policy for the limited purpose of impeachment. Bellefonte cites no authority to support its position that the admission of the testimony for that limited purpose was erroneous, thus failing to comply with TEX. R.CIV.P. 418(e). Bellefonte's point of error fifty-nine is overruled.

In its final points of error, sixty and sixty-two, Bellefonte urges the trial court erred in admitting reports of G.A.B. and records of Market Insurance Company concerning Brown's claim. Both of these contentions are without merit.

With regard to point of error sixty, Bellefonte asserts that the G.A.B. reports were privileged communications between Bellefonte and its G.A.B. agents investigating the claim and as such were inadmissible evidence. Accordingly, Bellefonte argues that Brown's attorney should not have been allowed to use the G.A.B. reports to cross-examine Gannon and thus prove that the remarks in the telex conflicted with the reports and that the telex was sent in bad faith. However, prior to trial, the same reports had been distributed by G.A.B. to several other insurance companies covering Brown, including Wisenberg's Delta Lloyds Insurance Company. Since the information was not transmitted exclusively to Belle-

fonte the documents were not privileged. Bellefonte's point of error sixty is overruled.

■ In point of error sixty-two, Bellefonte complains of the admission of Market Insurance Company business records. Bellefonte's brief specifically objects to the admission of Market's file on the fire claim of Houston Wiper & Mill Supply Company and to the admission of three memoranda purportedly authored by Market's claims manager concerning his telephone conversations with Bellefonte employees Weiland and Gannon. The trial court overruled Bellefonte's objections to the admission of these records, and admitted them into evidence. (S.F.1581). However, the court later sustained these same objections (S.F. 1609), yet the records are included in this record on appeal. Bellefonte's direct examination of Weiland concerning the contents of the memoranda, opened the door to the use of all these records on cross-examination. We find that the use of, or admission of, these records did not constitute reversible error.

The record does not reflect that the jury saw any of the business records or memoranda complained of. Further, Bellefonte failed to complain of the inclusion of the records or memoranda in this appeal. Therefore, point of error sixty-two is overruled.

## BELLEFONTE'S APPEAL AGAINST WISENBERG

■ In its seventh and eighth points of error, Bellefonte challenges the jury's response to Special Issue twenty-seven that the telex sent by J.T. Gannon (Bellefonte) was sent with malice, on the grounds of no evidence and against the great weight and preponderance of the evidence. Alternatively, Bellefonte argues in point of error eleven that the telex was non-malicious and absolutely or qualifiedly privileged, and in point of error thirteen that the jury's responses to Special Issues forty-seven, forty-eight and forty-nine, that the telex was not true or substantially true, not justified and not qualifiedly privileged, were against the great weight and preponderance of the evidence. We disagree with each point.

The jury was instructed that the term "malice," as used in Special Issue twenty-seven, meant:

(1) With knowledge of its falsity, or

(2) With reckless disregard of whether it was false or not, or

(3) In reckless disregard of the rights of others.

The jury heard a substantial amount of testimony on this point. The jury was familiar with the text of the telex in which Gannon stated that Wisenberg misrepresented the risk, suggested that Lloyd's of London deny Brown's claim and declared that Market Insurance Company had decided to deny the claim. The jury also was exposed to correspondence between Wisenberg and Bellefonte including the Schirmer Engineering report, which plainly stated that the sprinkler system was drained on cold nights to prevent freezing. Further, the jury could consider that the Schirmer report was sent to Shoultz (Bellefonte) approximately one month prior to the loss. Other factors which may have affected the jury's consideration were that although Gannon had access to the Schirmer report and saw Shoultz two to three times per week, he did not discuss Brown's claim with him before sending the telex. Additionally, Gannon testified that the statement he made in the telex regarding the heated building was untrue and that he spent only twenty to thirty minutes reviewing the claim and underwriting files before sending the telex. Moreover, Shoultz testified that Wisenberg did not intentionally misrepresent anything to him, did not withhold information from him and did not tell him anything different than he told the other insurance companies.

Applying the standards of review articulated in *Associated Milk Producers v. Nelson, supra,* we hold that it is clear that the jury's findings were not against the great weight and preponderance of the evidence, were not manifestly unjust and were amply supported by evidence.

According to *Marshall v. United Finance & Thrift Corp.,* 347 S.W.2d 623, 626 (Tex.Civ.

App.—Dallas 1961, no writ), a qualified privilege would have protected Bellefonte if this communication had been a mere good faith exchange of information between insurance companies or if Bellefonte had a duty to solicit a denial of Brown's claims by the other insurance companies. The jury's finding of malice eliminated whatever qualified privilege Bellefonte may have had, though. It is clear that the telex was maliciously written and transmitted, and was not qualifiedly privileged. Accordingly, points of error seven, eight, eleven and thirteen are overruled.

In points of error nine and ten, Bellefonte contests the award of $50,000.00 for actual damages to Wisenberg caused by the libelous telex, on the grounds of no evidence and against the great weight and preponderance of the evidence. Point of error seventeen contains a similar no evidence complaint.

Libel is "a defamation expressed in printing or writing ... tending to injure the reputation of one who is alive, and thereby expos[ing] him to public hatred, contempt or ridicule, or financial injury, or [impeaching] the honesty, integrity, or virtue, or reputation of any one...." TEX.REV.CIV.STAT.ANN. art. 5430 (Vernon 1958). For a statement to constitute libel per se, "the written or printed words must be so obviously hurtful to the person aggrieved by them that they require no proof of their injurious character to make them actionable." *Fields v. Worsham,* 476 S.W.2d 421, 426 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). The law presumes actual damages if libel per se is proven. *Rogers v. Doubleday & Co.,* 644 S.W.2d 833, 835 (Tex. App.—Beaumont 1982, writ granted); *First State Bank v. Ake,* 606 S.W.2d 696, 702 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

A man's reputation for honesty is a valuable possession which is difficult to measure in dollars and cents. *Express Publishing Co. v. Gonzalez,* 350 S.W.2d 589, 592–93 (Tex.Civ.App.—Eastland 1961, writ ref'd n.r.e.). This is especially true in the insurance industry, in which one's reputation for honesty is essentially a requirement for licensing, as well as a primary determinant in the successful maintenance of business relationships with others in the industry. Bellefonte's blatant declaration in the telex, that Wisenberg misrepresented Brown's risk, clearly tended to injure his reputation and impeach his honesty.

Wisenberg suffered the effects of the telex in both his business and personal life. After he learned of the telex, Wisenberg felt compelled to ask for renewal binding authority from Lloyds of London only on the risks which were reinsured by his own company. He calculated his lost commissions at $10,000.00 year for each year from 1978–1981. Additionally, he testified that he experienced a lack of support at competitive rates in the facultative reinsurance market which other Texas Lloyds agents enjoyed. Wisenberg determined that this cost him approximately $200,000.00 profits.

Wisenberg also testified that he suffered personal embarrassment and humiliation. For example, he overheard Brown, in response to questions posed by people at a health club where both men are members, explain that the claim had not been paid in full because his agent had been accused of misrepresentation. The obvious question, "who is your agent," is then asked and the listener discovers that it is Wisenberg. Also, Wisenberg's ability to select a company which pays its claims for his clients has been questioned by prospective as well as current clients.

The false statement in the telex clearly was "so obviously hurtful" to Wisenberg that libel per se was established, thus negating Wisenberg's burden of proving actual damages.

Bellefonte's arguments that the jury's assessment of $50,000.00 actual damages was supported by no evidence or was against the great weight and preponderance of the evidence are patently without merit. Such damages cannot be measured by any one fixed rule or standard and thus are largely left to the discretion of the jury. *First State Bank v. Ake, supra.* Here, the

jury awarded actual damages in an amount much lower than what the evidence supported. We overrule points of error nine, ten and seventeen.

In its twelfth and sixteenth points of error, Bellefonte challenges the judgment for treble damages of $150,000.00 to Wisenberg, alleging that the telex was true or substantially true, and that the three elements of damages enumerated in the instruction following Special Issue twenty-eight provide no legal basis for the recovery of treble damages. However, Bellefonte failed to brief these points. Points of error are waived unless supported by argument and authority. *Nolan v. Bettis, supra;* TEX.R.CIV.P. 418(e). Thus, points of error twelve and sixteen are overruled.

Bellefonte next contends in points of error fourteen, fifteen and eighteen, that the trial court erred in awarding treble damages to Wisenberg because the award was not predicated on any cause of action pleaded or proved under the Texas Deceptive Trade Practices Act, that Wisenberg had no standing to sue under the Act and failed to fulfill the notice requirements. We need not consider these points because Wisenberg specifically alleged that Bellefonte, in sending the telex, violated TEX. INS.CODE ANN. art. 21.21, § 4 (Vernon 1981), not the Texas Deceptive Trade Practices Act, and Bellefonte thus failed to adequately explain why Wisenberg could not recover under article 21.21.

Article 21.21, § 4(2) establishes that:

causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, . . . in any . . . way, an . . . announcement or statement containing any assertion, representation or statement . . . with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading . . .

is an unfair and deceptive act or practice in the insurance business. Section Sixteen sets out the relief available to injured parties. It states that:

[a]ny person who has been injured by another's engaging in any of the practices declared in Section 4 of this Article . . . to be unfair methods of competition and unfair and deceptive acts or practices in the business of insurance . . . as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices.

(b) In a suit filed under this section, any plaintiff who prevails may obtain:

(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended. . . .

Wisenberg established each element necessary to recover under Article 21.21. He proved that Bellefonte directly caused the telex to be made, published and disseminated, and that it contained an untrue assertion regarding Wisenberg's conduct in placing insurance policies. The untrue assertion constituted libel per se, as previously discussed. Actual damages were set at $50,000.00 by the jury. Section sixteen clearly authorizes trebling the actual damages. Points of error fourteen, fifteen and eighteen are overruled.

Bellefonte next attacks the award of attorney's fees to Wisenberg in points of error twenty-six, twenty-seven and twenty-eight by claiming that no attorney's fees are recoverable in an action for libel or slander, for the defense of Brown's suit or for the prosecution of an indemnity claim. We disagree. "[T]he rule is clear that an agent who, in the performance of his duties for his principal, incurs liability for an act not morally wrong, may have indemnity from the principal . . . . This right of indemnity includes reasonable counsel fees incurred." *Modine Manufacturing Co., supra* (cites omitted). Later in this opinion we explain our holding that Wisenberg was an agent of Bellefonte. Since Wisenberg was Bellefonte's agent, we must grant him the rights associated with the status. Bellefonte must indemnify Wisenberg's attorney's fees in order to make him whole.

Finally, the untrue statements regarding Wisenberg violate article 21.21 of the Insur-

ance Code, and thereby provide yet another basis for recovery of attorney's fees. The Texas Supreme Court, in *Hi-Line Electric Co. v. Travelers Insurance Companies,* 593 S.W.2d 953, 954 (Tex.1980), pointed out that article 21.21 § 16(a) provides that any person bringing an action under that section, complaining of damages resulting from defendant's practices proscribed by section four of that article, is entitled to recover attorney's fees if successful. Points of error twenty-six, twenty-seven and twenty-eight overruled.

In its twenty-ninth, thirtieth and thirty-first points of error, Bellefonte asserts basically the same arguments against Wisenberg's recovery of attorney's fees as it did against Brown's recovery, i.e., that an incorrect legal standard for such an award was submitted, that independent theories of liability were combined and no evidence or Special Issue establishes that the fees were reasonable and necessary "in Harris County, Texas." As before, we find these points to be without merit. Bellefonte does not point out any alleged incorrect statements concerning the legal standard of recovery for attorney's fees, nor does it cite this court to any authority setting forth a "correct" alternative. Additionally, Bellefonte alleges that no evidence of probative force and no Special Issue establishes that Wisenberg's attorney's fees were reasonable and necessary "in Harris County, Texas." Since Bellefonte failed to support either point with any argument or authority, points of error twenty-nine and thirty-one are waived. *Nolan v. Bettis, supra;* TEX.R. CIV.P. 418(e).

With respect to point of error thirty, this court recognized in *Schepps Grocery Co. v. Burroughs Corp.,* 635 S.W.2d 606 (Tex.App.—Houston [14th Dist.] 1982, no writ), that where an overlap exists in the preparation of a case, a party may properly recover for legal services incurred in bringing its claim, although the same services also relate to a matter for which attorney's fees are not recoverable. We hold that the legal services incurred by Wisenberg in defending Brown's suit, and in prosecuting the indemnity claim against Bellefonte, necessarily overlapped. Although there was considerable overlap in the preparation of Wisenberg's case, the trial court did not err in the submission of Special Issue thirty-two. Point of error thirty is overruled.

Points of error thirty-two through forty address the jury finding of an agency relationship between Bellefonte and Wisenberg through evidence of actual and/or implied authority.

Point of error thirty-two alleges that the uncontroverted evidence establishes as a matter of law that Wisenberg was neither the actual nor apparent agent of Bellefonte, and thus, no knowledge, acts or omissions of Wisenberg are attributable to Bellefonte. In points of error thirty-five, thirty-six, thirty-eight and thirty-nine, Bellefonte similarly challenges the jury's finding of an agency relationship in Special Issues four and five, alleging that the findings was supported by no evidence or was against the great weight and preponderance of the evidence. We will review the record using the two standards of review set forth in *Associated Milk Producers v. Nelson, supra.*

Bellefonte vigorously alleges that Wisenberg was merely an insurance broker, and therefore, did not have the authority of an agent. This assertion is contrary to established case law in Texas. In *Foundation Reserve Insurance Co. v. Wesson,* 447 S.W.2d 436, 439 (Tex.Civ.App.—Dallas 1969, writ ref'd), the court held that a broker who billed for and collected premiums, and typed and validated policies on forms supplied by an insurer who was not admitted to do business in the state, was, in fact, the agent for the insurer. The court was careful to point out that the question of agency is one of fact and that circumstantial evidence may be used to establish the agency and extent of the agent's authority. *Id.* at 438. After a determination of agency is made, the general principles of agency law apply. The pertinent general principles are that acts of a local agent, which are within the scope of his delegated duties, are, as a matter of law, acts of the principal; that the principal is charged, as a matter of law,

with knowledge of the agent's acts within his official duties; and conversely, that any knowledge acquired by or given to the agent in the performance of those duties is, as a matter of law, imputed to the principal. *Adams v. La Salle Life Insurance Co.,* 99 S.W.2d 386, 388 (Tex.Civ.App.—Waco 1936, writ dism'd).

■ Testimony in this case establishes that, prior to and at all times material to the issuance of the insurance policy, Wisenberg executed a series of duties delegated to him by Bellefonte. These duties included serving as surplus lines agent for Bellefonte, thus allowing Bellefonte to do business in Texas; assisting in the risk evaluation of Houston Wiper & Mill Supply Company; providing specific policy forms concurrent with the other insurance policies held by Brown; collecting premiums for Bellefonte; and delivering the policy to Brown. These acts are more extensive than those performed in *Foundation Reserve* in which an agency relationship was found. We hold the jury's finding of a principal-agent relationship between Bellefonte and Wisenberg is supported by substantial evidence. Consequently, Bellefonte is charged, as a matter of law, with notice of all of Wisenberg's acts in question in this case and with all knowledge acquired by or given to Wisenberg. Bellefonte's points of error thirty-two, thirty-five, thirty-six, thirty-eight and thirty-nine are overruled.

Points of error thirty-three and thirty-four complain of the jury's finding that Bellefonte or its agents or employees knew or should have known that Brown turned off the sprinkler system when freezing weather was predicted on the grounds that the determination was supported by no evidence or was against the great weight and preponderance of the evidence. These points are not supported by argument or authority and failing to comply with TEX. R.CIV.P. 418(e), are waived. *Nolan v. Bettis, supra.*

In points of error thirty-seven and forty, Bellefonte contends that the trial court erred in submitting definitions of "insurance agent" and "implied" or "apparent authority" on the grounds that definitions were not required, that they instructed the jury on matters of law and were impermissible and prejudicial comments on the weight of the evidence. We disagree.

■ Bellefonte cites *Cain v. Tennessee-Louisiana Oil Co.,* 382 S.W.2d 794 (Tex.Civ. App.—Tyler 1964), *aff'd on other grounds,* 400 S.W.2d 318 (Tex.1966), for the proposition that agency is a question of law to be determined by the trial court and thus concludes that a Special Issue on the agency question should not have been submitted to the jury. In *Cain,* however, the special issue in question contained a mixed question of law and fact. The court of civil appeals reversed because the trial court had required the jury to base its verdict, not on acts and conduct of the party, as was done in our case and as authorized by *Foundation Reserve, supra,* but on whether *written instruments* executed by that party amounted to a binding contract for him to act for another. In this case, no Special Issue regarding Bellefonte's "Agent of Assured Clause" was submitted. The jury's decision was strictly based on evidence of Wisenberg's acts on behalf of Bellefonte. Thus, as previously discussed, our question of agency was one of fact and was correctly answered by the jury.

■ The two instructions of which Bellefonte complains state widely accepted definitions of the terms "insurance agent" and "implied" or "apparent authority." Explanatory instructions in the charge aid and assist the jury in answering issues submitted and they are required if the issue contains a legal or technical term. *Union Oil Co. v. Richard, supra.* Since we hold these were technical terms which had to be defined, points of error thirty-seven and forty are overruled.

The judgment of the trial court is affirmed in part and reversed and rendered in part.