James R. WILDMAN, Appellant,

v.

D. G. RITTER et al., Appellees.

No. 567.

Court of Civil Appeals of Texas,
Tyler.

July 1, 1971.

Rehearing Denied July 29, 1971.

Andress & Woodgate, Wm. Andress, Jr.,
Dallas, for appellant.

Johnson, Bromberg, Leeds & Riggs,
Robert H. Bliss, Dallas, for appellees.

MOORE, Justice.

Appellant, James R. Wildman, instituted
this suit against Computer & Systems Re-
source Management, Inc. and D. G. Ritter
for damages arising out of the breach of
an employment contract. As grounds for
a cause of action, Wildman alleged that
he had a two-year employment contract
as executive vice president with Computer
& Systems Resource Management, Inc.
and that he was wrongfully discharged

before the end of the term. A trial before a jury resulted in a take-nothing judgment against Wildman based upon jury findings that good cause existed for his discharge. From this judgment, Wildman perfected this appeal.

We affirm the judgment entered by the trial court.

A brief statement will be necessary. The record shows that the instrument sued upon was in the form of a letter addressed to appellant from D. G. Ritter, president of Computer & Systems Resource Management, Inc., which read in part as follows:

"Dear Mr. Wildman:

"Computer and Systems Resource Management, Incorporated has been formed to provide professional educational consulting and systems management services to industry. We plan to begin full operations 1 June 1969 and are now in the process of selecting the initial professional staff.

"We are pleased to offer you the position of Executive Vice President of the corporation. Your services will be needed not later than 12 May 1969 at the corporate headquarters in Dallas, Texas. Initial annual salary will be twenty-two thousand five hundred dollars ($22,500). You will be required to execute a two-year employment contract with the corporation.

"You will receive an option of eight thousand (8,000) shares of stock in the corporation. Details of this opinion and employee benefits will be given you prior to the execution of your employment contract."

Appellant accepted employment by signing a copy of the letter and returning it to Ritter as requested. At the time of appellant's discharge, no formal employment contract had been executed.

Computer & Systems Resource Management, Inc. (hereinafter referred to as C & S R M), was a corporation formed in May, 1969, to provide professional educational consulting and systems management services to industry. The principal investor, as well as the company's first president, was D. G. Ritter. The Board of Directors of the corporation consisted of D. G. Ritter, Richard A. Favro and appellant, James R. Wildman. Ritter served as president from the inception of the corporation until the first week of August, 1969, when Favro was made president. Appellant, James R. Wildman, served as vice president of the corporation from its inception until the time he was discharged on October 20, 1969. While the letter of employment indicates that Wildman was to be employed as "executive" vice president, the corporate minutes reveal that his office was that of "vice president." The evidence shows that immediately after appellant was employed he was given instructions as to the scope of his authority. According to Ritter and Favro, Wildman was instructed that it was his duty to handle the "technical team" of the corporation, but was not to make any executive decisions. If any executive decisions arose, he was to consult Mr. Ritter, and in the event he was not available, he was to consult Mr. Favro. Wildman testified that he understood that Favro was his superior and acted for Ritter even though Favro was not president in the early stages of the company. He also admitted that Favro had changed the scope of his duties from time to time.

In early August, 1969, Mr. Favro called a meeting of the technical team composed of appellant, Mr. Biggs, Mr. Jannach and Mr. Barstow. During the course of the meeting Mr. Favro advised them that the income of the corporation had not come up to expectations and that it would be necessary for the company to curtail expenses. As a result of this statement, appellant, Biggs, Jannach and Barstow apparently became apprehensive as to the financial stability of C & S R M. Shortly thereafter, without the knowledge of either Ritter or Favro, they got together and

discussed the matter and commenced formulating certain plans whereby C & S R M could be sold or merged with another corporation. It appears that Mr. Biggs knew an investor in Amarillo, Texas, by the name of Royal Jackson whom he thought might be interested in acquiring or forming some type of enterprise of this nature. As a result, he, Wildman and Barstow prepared a letter to Jackson setting forth three alternate business plans by which a new corporation could be formed or by which C & S R M could be merged with another corporation. The first proposal in the letter was that the "technical team" consisting of Wildman, Biggs, Jannach and Barstow, would leave the employment of C & S R M and would cooperate with Jackson in buying control of another corporation by the name of Iconic Teleprocessors, Inc. Secondly, they proposed the possibility of purchasing control of C & S R M from Ritter. Thirdly, they proposed to form a totally new corporation using the technical team of C & S R M and taking over some of the business of C & S R M. After the letter had been prepared, Biggs took it to Amarillo and discussed the proposals with Jackson. The proposal was never accepted. Appellant does not dispute the fact that he participated in this entire transaction.

Upon learning of this, Favro, as president of C & S R M, immediately discharged appellant. Appellant then instituted this suit for the remainder of his salary alleged to be due under the contract.

At the close of appellant's evidence, appellees moved for an instructed verdict on the ground that no contract existed, as a matter of law, in that the letter of employment constituted nothing more than a contract to make a contract and therefore was not binding. After overruling the motion, the trial court submitted the cause to the jury upon eleven special issues. In response to special issues numbers 4, 9, 10 and 11, the jury found (4) that Wildman exceeded the course and scope of his authority as executive vice president in submitting the reorganization proposal to Royal Jackson, (9) that such conduct constituted good cause for appellant's discharge, (10) that the participation by Wildman in the formulation of the proposal to Royal Jackson constituted disloyalty, and (11) that such disloyalty constituted good cause for appellant's discharge.

■ By the first five points, appellant urges that there is no evidence to sustain the jury's findings that he, Wildman, exceeded his authority or was guilty of disloyalty, or that such conduct constituted good cause for his discharge. We do not agree. There is an implied obligation on the part of the employee to do no act which has a tendency to injure the employer's business, interest or reputation. Any breach of this obligation will justify the employer in discharging the employee from his services. Royal Oak Stave Co. v. Groce, 113 S.W.2d 315 (Tex.Civ.App., Galveston, 1937, writ dism.); 56 C.J.S. Master and Servant § 42, pp. 429–430.

■ It is fundamental that upon an appeal from a jury verdict it is the duty of the appellate court to view the evidence and the reasonable inferences therefrom most favorably in support of the jury's finding. Jecker v. Western Alliance Insurance Company, 369 S.W.2d 776 (Tex. Sup., 1963). Under this rule, we are satisfied that the evidence set forth herein is sufficient to constitute at least some evidence of probative force in support of the finding that appellant exceeded his authority and was disloyal to his employer. It is without dispute that he participated in a plan to organize a competing business using the technical staff of C & S R M and to take its business. Had he been successful, the business of C & S R M would have been seriously disrupted if not destroyed. In these circumstances we think there was sufficient evidence to support the finding that C & S R M had good cause to discharge appellant. After a careful consideration of the entire record

we cannot agree with appellant's proposition that the verdict and judgment is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

Appellant's points 6, 7 and 8 urge that there was no pleading to support the submission of the special issues numbers 4, 9, 10 and 11. A review of appellees' pleadings shows that appellees specifically alleged the affirmative defense that good cause existed for discharging appellant. While appellees' pleadings did not set forth all the evidence relied upon as proof of such defense, such is not necessary. We think the pleading was sufficiently broad to justify the submission of issues on each of such questions. At any rate the record shows that appellant failed to object to evidence on the ground that same was not supported by pleadings. Such issues must therefore be deemed to have been tried by consent. Rule 67, Texas Rules of Civil Procedure. These points appear to be without merit and are therefore overruled.

In the tenth point appellant complains of the submission of special issue number 4 and special issue number 10, urging that these issues constitute a double submission of the same fact situation thereby constituting a comment upon the weight of the evidence by unduly accentuating the appellees' defense. Special issue number 4 inquired as to whether Wildman exceeded his authority in submitting the proposals to Royal Jackson, while special issue number 10 asked if the act of submitting the proposal constituted disloyalty. As we view the record, these issues amount to nothing more than two special issues based upon two legal theories arising out of the same set of facts. Appellees' defensive theories were first that good cause existed for discharging Wildman because he exceeded his authority in submitting the proposals to Royal Jackson, and secondly that such conduct amounted to disloyalty. We fail to see how the submission of these two issues could be construed as a double submission of the same fact issues. But even so, we do not believe the error, if any, is of such gravity that it was reasonably calculated to cause, and probably did cause the rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure.

In view of the foregoing conclusions, it will not be necessary to pass upon appellees' cross point asserting that appellant's suit upon a contract fails, as a matter of law, because no employment contract was ever executed by the parties.

Finding no reversible error, the judgment of the trial court is affirmed.