J. G. Hornberger, J. G. Hornberger, Jr., Laredo, for appellant.

Roger C. Rocha, Laredo, for appellee.

OPINION

CADENA, Chief Justice.

Defendant, Arturo Garcia, Jr., d/b/a Garcia Music and Vending, appeals from a judgment rendered against him in favor of plaintiff, Alfredo Santos, Jr., in which plaintiff sought to recover certain property allegedly converted by defendant. In addition, plaintiff sought recovery of damages.

The judgment provides that plaintiff recover from defendant "the property listed in Plaintiff's Exhibit 'B' of Plaintiff's Original Petition upon Plaintiff presenting a written proof of ownership." In addition, the judgment provides for recovery of $1,400.00 in damages by plaintiff.

On its face the judgment declares that the right of plaintiff to a return of the property will be effective only upon the happening of a future event or contingency, the occurrence of which is wholly uncertain. Such a judgment is not final for the purpose of appeal. *Jordan v. Burbach*, 330 S.W.2d 249 (Tex.Civ.App.—El Paso 1959, writ ref'd n. r. e.); *Abell v. Abell*, 246 S.W.2d 248 (Tex.Civ.App.—Amarillo 1952, no writ).

The appeal is dismissed.

ASSOCIATED MILK PRODUCERS, Appellant,

v.

Harold S. NELSON, Appellee.

No. B2717.

Court of Civil Appeals of Texas, Houston (14th Dist.).

July 29, 1981.

Sydney Berde, St. Paul, Minn., Jerry K. Fellows, Chicago, Ill., Craig L. Austin, San Antonio, Tex., for appellant.

Anthony Nicholas, San Antonio, for appellee.

Before COULSON, MILLER and MURPHY, JJ.

COULSON, Justice.

This is an appeal involving an alleged breach of employment contract and wrongful termination of retirement benefits. Appellant, Associated Milk Producers, Inc., (hereinafter referred to as AMPI), appeals from a judgment rendered in favor of appellee, Harold Nelson. We affirm.

Appellee Nelson's involvement with the dairy industry dates back many years. In 1948 or early 1949, Nelson was instrumental in forming the Milk Producers Association of San Antonio. The organization was formed to provide services for the dairy farmer, including providing facilities for use of excess milk, checking the utilization of milk, and checking the weights on which the farmer was paid for his milk. Nelson was employed by this organization until 1955. The Texas Milk Producers Federation was then formed and Nelson served as its manager until its dissolution in the mid-1960's. Nelson then formed MPI, or Milk Producers Incorporated, in 1966. Nelson was employed by MPI as general manager. MPI took in all the members of the Texas Milk Producers Federation. MPI later became a part of appellant AMPI. AMPI was made up of dairy cooperatives from approximately twenty-two states.

Nelson served as general manager of AMPI under a written contract of employment that was dated March 1969 and was to extend until March of 1976. Nelson was also an attorney and was to provide legal services to AMPI during the term of the contract. Nelson was to be paid $100,000.00 per year and was to accrue retirement benefits.

On January 12, 1972, Nelson and AMPI entered into a new contract which rescinded and superseded the prior employment contract. The term of the new contract was from January 12, 1972, through February 28, 1979. The contract provided that Nelson would "render such consulting and counselling services to Associated as may be reasonably requested of him from time to time by the General Manager of Associated." Nelson would be granted a paid vacation of two months per year. Nelson was not precluded from engaging in any other activities if such activities did not materially prevent him from performing his duties under the contract.

By letter of November 1, 1973, Nelson was informed that the executive committee of the Board of AMPI had directed that the employment agreement of January 12, 1972 be cancelled, effective October 15, 1973. The retirement committee of AMPI notified Nelson in a letter dated September 12, 1974, that the committee had rescinded and terminated Nelson's pension benefits under the retirement plan and trust for employees of AMPI. Such action was taken by the committee as a result of a criminal information in the matter of the *United States of America v. Harold S. Nelson* to which Nelson pled guilty on July 31, 1974. The information stated that from on or about January 1, 1967 to on or about January 12, 1972, Nelson and co-conspirators MPI, AMPI, David L. Parr, Bob A. Lillby, Robert O. Isham, and Stuart H. Russell, "conspired, combined, confederated and agreed together and with each other willfully to make corporate contributions and expenditures in connection with the 1968, 1970 and 1972 elections" in violation of federal law. Nelson was sentenced to three years in prison, four months to be served and the remaining

sentence to be suspended. He was also fined $10,000.00. Nelson's license to practice law in Texas was revoked in 1977. On August 1, 1974, defendant AMPI likewise pled guilty to an information charging it with conspiracy and illegal corporate contributions and was fined $35,000.00.

In September of 1974, AMPI filed suit against Nelson, attempting to recover the $332,000.00 that had been wrongfully used for political contributions. Nelson filed a counterclaim against AMPI, seeking actual and punitive damages and attorney's fees for breach of employment contract and unlawful termination of pension benefits. The trial court granted Nelson's motion for summary judgment, holding that AMPI take nothing against Nelson (such holding is not before this court) and that AMPI's suit against Nelson be severed. Nelson's case against AMPI was tried before a jury. The jury found: (1) a majority of the Board of AMPI had knowledge of the illegal political contributions when it approved Nelson's contract of January 12, 1972 (2) Nelson did not conceal the information on contributions from the Board (3) there was no failure of consideration on Nelson's part to perform the contract services because of his incarceration (4) AMPI did not have cause for terminating Nelson's contract (5) it was not impossible for Nelson to perform his contract while in prison (6) Nelson substantially performed the contract through October 15, 1973 (7) an agreement to provide legal services was not a material part of the contract (8) Nelson did not waive his claim to retirement benefits by not appearing to present a defense to the Retirement Committee on September 12, 1974 (9) AMPI acted in bad faith in terminating Nelson's retirement benefits (10) December 15, 1949, was the date Nelson was first employed by AMPI or its predecessor corporations for the purpose of determining his date of employment under the retirement plan of AMPI (11) $520,000.00 was owed to Nelson under the terms of his contract on February 28, 1979 (12) the value of Nelson's retirement benefits as of February 28, 1979, was

$399,968.00 (13) $247,500.00 was a reasonable attorney's fee for the preparation and trial of the case (14) $67,500.00 was a reasonable attorney's fee for an appeal to the Court of Civil Appeals and (15) $22,550.00 was a reasonable attorney's fee for an appeal to the Texas Supreme Court if writ of error was not granted and $67,500.00 if the writ was granted. Judgment was entered that Nelson recover damages of $1,036,634.00 and attorney's fees of $400,000.00. The judgment provided that portions of the attorney's fee award be remitted if the case was not appealed to the Court of Civil Appeals and the Texas Supreme Court. AMPI appeals.

AMPI claims in points of error one through four that Nelson is estopped from denying the fraud and illegality of the transaction out of which his contract arose by his prior pleadings of *pari delicto*, that Nelson has unclean hands, that he has not done equity by restoring the corporate funds, and that Nelson's misappropriation was *malum in se* and cannot be ratified by AMPI. Appellant assumes in these points that the misappropriation of corporate funds by Nelson and the contract of 1972 is somehow a continuous transaction. Ordinarily the Texas courts will not enforce an illegal contract. *Peniche v. Aeromexico*, 580 S.W.2d 152 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). AMPI and Nelson were in *pari delicto* as to the misappropriation of corporate funds. Both pled guilty, were convicted of crime, and paid fines. Thus in a suit by either against the other to recover fines or recoup corporate funds, the courts would leave the parties where it found them. If the parties were in *pari delicto* as to one transaction, this would not necessarily invalidate all future transactions between the parties. If the tainted transaction has been completed and another grows out of it dependent on a new consideration, the new contract is not vitiated by the taint of the old one and will be enforced. *Gulf Collateral, Inc. v. Cauble*, 462 S.W.2d 619 (Tex.Civ.App.—Fort Worth 1971, no writ).

The testimony of directors of AMPI establishes that the contract of January 1972 between Nelson and AMPI was not illegal or connected with the improper activities that preceded it. Director Jones testified that Nelson was asked to resign because the cost of operation was too high. Nowhere is there testimony that Nelson was asked to resign because of prior activity. There is evidence in the record that the Board members of AMPI knew of the illegal political contributions at the time of execution of the 1972 contract with Nelson. AMPI continues to claim in this court that the Board of Directors had no knowledge of the illegal campaign contributions. A memorandum opinion by the United States District Court in Arkansas written in the case of *AMPI v. David L. Parr* (a former employee of AMPI) is in the record. AMPI sued Parr for recovery of corporate funds misappropriated by Parr for political contributions. Judgment was entered after a jury trial that AMPI take nothing. The court stated:

> The Court finds as a fact that Mr. Parr believed the political contributions he made with corporate funds to be in the best interest of AMPI, or at the very least not opposed to those interests. The dairy farmers who were members of AMPI had a vital interest in certain actions of the United States Department of Agriculture, principally the setting of a support price for milk, and Mr. Parr reasonably believed that political contributions would further that interest. This belief, it should be added, was shared by the General Manager of AMPI, Harold S. Nelson, by other employees of AMPI, and by at least some members of the Board of Directors. The verdict of the jury in favor of Mr. Parr on the main claim asserted by AMPI indicates the jury's belief, with which the Court agrees, that the Board of Directors of AMPI was aware of the contributions being made by Mr. Parr and acquiesced in them, if it did not approve them expressly.

The fact that the AMPI Board had knowledge of the contributions is supported by the record and yet the Board nevertheless chose to enter into a new employment contract with Nelson. AMPI released a statement at the time of formation of the new contract that Nelson was a major founder of AMPI and a leader in all activities of the dairy industry. This new contract was based on valuable consideration and was not tainted by any illegality. We find no connection between the illegal campaign contributions and the employment of Nelson to render consulting services. Even if Nelson's demand was connected with the illegal transaction, it is the rule in this State that recovery may still be had if the plaintiff requires no aid from the illegal transaction to establish his case. *Morrison v. City of Fort Worth*, 138 Tex. 10, 155 S.W.2d 908 (1941). If a party can show a complete cause of action without being obliged to prove his own illegal act, although said illegal act may appear incidentally and may be important in explanation of other facts in the case, he may recover. *Norman v. B. V. Christie & Co.*, 363 S.W.2d 175 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.). These points of error are overruled.

AMPI argues in point of error seven that the corporation had good cause for terminating Nelson. It is the rule that a breach of an employee's implied obligation under an employment contract to refrain from acts which have a tendency to injure the employer's business interests or reputation will justify the employer in discharging the employee. *Wildman v. Ritter*, 469 S.W.2d 446 (Tex.Civ.App.—Tyler 1971, writ ref'd n. r. e.); *Royal Oak Stave Co. v. Groce*, 113 S.W.2d 315 (Tex.Civ.App.—Galveston 1937, writ dis'd). The testimony shows that the last illegal contribution made by Nelson was in December of 1971. The contract in question here was executed in January of 1972 and Nelson was discharged in October of 1973. The evidence does not show that Nelson had done any acts during the term of this contract which would injure AMPI's interests or reputation. We overrule this point of error.

■ We next turn to AMPI's objections in points of error ten, fourteen, fifteen, and seventeen to the findings of the jury concerning Nelson's right to retirement benefits. AMPI attempts to rely on the Texas Trust Act in claiming that Texas Commerce Bank as trustee of the retirement plan and the Retirement Committee of AMPI as administrator of the plan, were indispensable parties to the action and the court was without jurisdiction on Nelson's claim to the benefits without these parties. We disagree. The Act provides that actions may be brought by a trustee, beneficiary, or any person affected by or having an active interest in the administration of the trust estate. Tex.Rev.Civ.Stat.Ann. art. 7425b–24(c) (Vernon 1960). The section further provides that the only necessary parties to such actions shall be those designated by name in the instrument creating the trust and anyone receiving distributions from the trust at the time the action is filed. The statute makes such parties necessary and not indispensable. The Texas Supreme Court has discussed the issue of joinder of parties. Rule 39 of the Texas Rules of Civil Procedure which deals with joinder of persons needed for just adjudication was amended effective January 1, 1971. An aim of the revised rule was to avoid questions of jurisdiction. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200 (Tex.1974). The concern of courts today is not that of jurisdiction of a court to proceed (as AMPI contends) but of whether the court ought to proceed with those who are present. *Id.* The Court stated under the present Rule 39, "[i]t would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined." *Id.* at 204. AMPI argues that the specific statutory language of the Texas Trust Act controls over Rule 39 and interpretations of that rule. AMPI ignores, however, that the provision of the Texas Trust Act upon which it relies, refers to necessary parties and not indispensable parties. We find that the trustee under the retirement plan was not an indispensable party in this case. The court had jurisdiction to proceed with the parties before it. If AMPI had considered it in its best interest for the trustee to be named, AMPI could have filed a plea in abatement and requested that Texas Commerce Bank be joined.

Relevant case law concerned with retirement plans has been consistent with this reasoning. In *Ennis Business Form, Inc. v. Gehrig*, 534 S.W.2d 183 (Tex.Civ.App.—Waco 1976, writ ref'd n. r. e.), the employee whose benefits were terminated sued the company and the individual members of the retirement committee and not the trustee of the plan. The court considered the control that the retirement committee had over the administration of the plan and refused to find the trustee of the plan an indispensable party. *Id.* AMPI's plan states it is to be administered by the Retirement Committee appointed by the Board of Directors. It also provides that "payments shall be made from the trust fund by the trustee to such persons, in such manner, at such times, and in such amounts as the Retirement Committee, ... may from time to time direct in writing." The committee's control is apparent from the plan and the trustee would pay benefits or cease paying upon directions from the committee. It is thus unnecessary for the trustee to be a named party.

■ AMPI, in challenging the jury finding that AMPI acted in bad faith in terminating Nelson's retirement benefits, claims there is no evidence or insufficient evidence, to support this finding. In reviewing the no evidence point, this court must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). If there is evidence to support the judgment, we must review the insufficient evidence point, weighing all evidence to ascertain if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re*

*King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951) (per curiam).

■ AMPI relies on the first paragraph of Section 2.10 of the retirement plan which states:

### 2.10—TERMINATION OF SERVICE FOR DISHONESTY

If dishonest conduct injurious to the company, committed by a participant prior to the date of termination of the plan or prior to the date contributions to the trust are permanently discontinued, is determined by the company prior to his termination of service with the company or within one year after his service with the company is terminated or within one year after his retirement under the plan, as the case may be, the retirement committee, upon notice in writing from the company, may terminate such a participant's interest and benefits under the plan and trust fund.

It is apparent from this provision that the company has the power to determine if Nelson's conduct was dishonest conduct injurious to the company. After a determination of dishonest conduct, the retirement committee is responsible for terminating the participant's benefits. The section also provides the decision of the retirement committee shall be final and binding. The determination of dishonest conduct can only be attacked by showing there was bad faith or fraud in the employer's actions. *Texaco, Inc. v. Romine*, 536 S.W.2d 253 (Tex.Civ. App.—El Paso 1976, writ ref'd n. r. e.). AMPI claims a lack of bad faith.

AMPI relies on this first portion of section 2.10 and ignores the following paragraph:

The dishonest conduct injurious to the company committed by a participant shall be determined and decided by the retirement committee only *after a full investigation of such alleged dishonest conduct and an opportunity has been given the participant to appear before the retire-* ment committee to present his case. *The decision by the retirement committee in such cases shall not be made in such a manner so as to discriminate in favor of participants* who are officers, shareholders, supervisors or highly compensated and any such decision so made by the retirement committee shall be final and binding on all participants and other persons affected by such decision. (Emphasis added).

■ The record supports the jury finding that the committee failed to act in good faith. The jury was instructed that bad faith includes using standards more strict than those applied to others similarly situated. There is evidence throughout the record that the retirement committee, in its revoking of Nelson's benefits, treated Nelson differently than those who acted similarly. Bob A. Lilly was named as a co-conspirator in the federal information against Nelson and his retirement benefits are still intact. Ira Rutherford, the general manager of AMPI who served on the retirement committee from 1972 to 1978, testified that the subject of Lilly's retirement benefits came before the committee, and the only action taken was related to granting him disability payments from the plan. Robert Isham, another party named as a co-conspirator in the information, withdrew in cash upon his retirement, the total amount due him from the retirement plan. Keefer Howard, an employee of AMPI in Arkansas, pled guilty to a felony in Arkansas for making illegal political contributions. He was discontinued as an employee of AMPI for a period of time but then was re-employed and his benefits are still accruing. The retirement committee considered David Parr's plea of guilty to a felony to be injurious to the corporation, but did not terminate his benefits. We find there was evidence of bad faith by the committee in terminating Nelson's benefits and in continuing the benefits of others who acted similarly.

AMPI disputes that the date of December 15, 1949, was the date of employment for

Nelson for purposes of computing retirement benefits. We find no merit in this claim. As shown by AMPI's own records, plaintiff's exhibits 9, 10, and 11, the date of employment of Nelson is listed as 12–15–49. Exhibit 11 is headed "Employee Benefit Statement as of Valuation Date July 1, 1973" and all amounts were computed by AMPI as of 12–15–49. Points ten, fourteen, fifteen and seventeen are overruled.

In objecting to the award of attorney's fees to Nelson in point of error eighteen, AMPI points out that Nelson pled a cause of action for breach of contract and is not entitled to such fees because art. 2226 only allows the recovery of attorney's fees for "services rendered." Nelson's right to attorney's fees must derive from art. 2226 since the fees were not provided for by contract with AMPI. AMPI relies on the 1971 version of art. 2226 which provides for the recovery of attorney's fees "for [personal] services rendered" but not for suits based upon a contract. 1971 Tex.Gen.Laws, ch. 225, § 1, at 1073. The statute was amended in 1977 to allow for fees in cases where a person has a claim founded on an oral or written contract. 1977 Tex.Gen. Laws, ch. 76, § 1, at 153. Although the 1977 statute was silent as to its applicability to pending or future actions, the Texas courts did apply the statute in effect at the time of trial (and not when the cause of action arose). *Duval County Ranch Co. v. Alamo Lumber Co.*, 597 S.W.2d 528 (Tex. Civ.App.—Beaumont 1980, no writ). Art. 2226 was once again amended in 1979 and the legislature then expressly provided, "This Act is remedial in character and is intended to apply to all pending and future actions, regardless of the time of institution thereof or of the accrual of any cause of action asserted." 1979 Tex.Gen.Laws, ch. 314, § 2 at 718. Judgment in this case was signed and rendered on March 3, 1980. Thus the 1979 version of Art. 2226 is applicable to this case.

We find that attorney's fees were properly awarded and we overrule this

point. Nelson sued AMPI for breach of contract and art. 2226 allows for fees in suits founded upon oral or written contracts. Nelson's cause of action was also for reinstatement of the retirement benefits that were terminated. Art. 2226 also encompasses claims against a corporation for services rendered. Nelson's retirement benefits derive from a plan of AMPI and such plans create contractual rights and obligations and are regarded as a mode of employee compensation. *Southwestern Bell Tel. Co. v. Gravitt*, 551 S.W.2d 421 (Tex.Civ. App.—San Antonio, 1976 writ ref'd n. r. e.). Attorney's fees necessarily incurred by Nelson in reinstating his right to retirement benefits would be allowed by art. 2226 since the suit is for damages for breach of contract rights and for personal services rendered.

We have examined the remaining points of error of AMPI and find they are without merit. They are therefore overruled.

Affirmed.