Opinion issued March 12, 2009









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00276-CV






GRIFFIN MACY, Appellant/Cross-Appellee


V.


WASTE MANAGEMENT, INC., Appellee/Cross-Appellant






On Appeal from the 157th District Court

Harris County, Texas

Trial Court Cause No. 2004-47274






MEMORANDUM OPINION

 Appellant, Griffin Macy, appeals a final judgment ordering he take nothing
from appellee, Waste Management, Inc. The judgment also orders Macy to pay
$170,173.19 to Waste Management for repayment of attorney's fees and litigation
expenses advanced to Macy. Macy's three issues contend the trial court erred by (1) 
determining as a matter of law that Waste Management complied with the terms of
the employment Agreement it had with Macy; (2) finding the Board of Directors'
determination of cause was timely under the Agreement; and (3) denying certain
discovery to Macy. In two issues in a cross-appeal, Waste Management contends it
was entitled to judgment for $357,843.41, the entire amount of the fees it advanced
to Macy, because Macy was not the prevailing party under the terms of the
Agreement and the Agreement does not provide for segregation of attorney's fees. 
We conclude the trial court properly determined Waste Management complied with
the terms of the Agreement; that Waste Managment was due the return of only those
fees it advanced to Macy following the decision of the Board of Directors (the Board)
that Macy was terminated for cause, excluding the amount pertaining to litigation
over the amount of the fees; and that the trial court properly denied the requested
discovery. We affirm.

Background Waste Management hired Macy in 2000 as the vice president of Enterprise
Systems Development (ESD) in charge of software development. Macy had an
employment Agreement with Waste Management, which provided that his
employment "shall continue . . . unless terminated pursuant to the terms of Section
5 and 6 of this Agreement."

 Section 5 of the Agreement, entitled "Termination of Employment," provided
that employment "may be terminated under the following circumstances." Those
circumstances included death; total disability; voluntary termination by the employee;
termination by the company without cause; and termination by the company for
cause. The Agreement listed the following three criteria applicable to the designation
of termination for cause under section 5:

 (c) Termination by the Company for Cause. The Company may
terminate Employee's employment hereunder for "Cause" at any time
after providing written notice to Employee.

 

 (i) For purposes of this Agreement, the term "Cause" shall mean any of
the following . . . (C) fraud or embezzlement determined in accordance
with the Company's normal investigative procedures consistently
applied in comparable circumstances . . . . 

 

 (ii) An individual will be considered to have been terminated for Cause
if the Company determines that the individual engaged in an act
constituting Cause at any time prior to a payment date for any amounts
due hereunder, regardless of whether the individual terminated
employment voluntarily or is terminated involuntarily, and regardless of
whether the individual's termination initially was considered to have
been for Cause. 

 

 (iii) Any determination of Cause under this Agreement shall be made by
resolution of the Company's Board of Directors adopted by affirmative
vote of not less than a majority of the entire membership of the Board of
Directors at a meeting called and held for that purpose and at which
Employee is given an opportunity to be heard. 


In the event of a dispute arising out of section 5(c)--the section describing
termination for cause--section 10 of the Agreement provided for advance payment
of the employee's attorney's fees for resolution of disputes between the employee and
Waste Management.

 Depending on the circumstances under which the employee stopped working
for the company, section 6 of the Agreement provided for the structure of
compensation following termination. Upon termination for cause or voluntary
termination of employment, the employee received few benefits, such as payment of
accrued wages. However, for termination without cause, the employee received more
substantial benefits to be paid over a two-year period of time. The Agreement
provided,

 (e) Termination by the Company Without Cause. . . . [T]he company
shall pay the following amounts to Employee:


 . . . .


 (iii) An amount equal to two times the sum of Employee's Base Salary
plus his or her target annual bonus (as then in effect), of which one-half
shall be paid in a lump sum within ten (10) days after such termination
and one-half shall be paid during the two (2) year period beginning the
date of Employee's termination . . . . 


 In early 2004, Lynn Caddell was hired by Waste Management as its Chief
Information Officer. At a meeting between Caddell and Macy, Macy stated he was
thinking about leaving the company. On April 5, 2004, Macy stopped working for
Waste Management. Caddell indicated she was accepting Macy's resignation. Macy,
however, believed he was terminated without cause and entitled to severance fees in
accordance with the Agreement. 

 Waste Management's Forensic Audit Services (FAS) conducted a "Special
Review" of ESD, issuing an audit report in June 2004. FAS typically investigated
financial impropriety within the company. The report indicated 12 people were
interviewed, including Warren Brauer, "Finance Manager, ESD (Contractor)"; Gary
Rind, "Budget Coordinator, ESD (Contractor)"; and Christy Cooper, "IT Controller." 
Macy was not interviewed. 

 In August 2004, Macy sued Waste Management for breach of contract for
failure to pay the severance fees required for termination without cause. Waste
Management generally denied, later amending to include affirmative defenses that
Macy resigned or could have been terminated for cause. 

 In August 2005, and while Macy's lawsuit was pending, Waste Management
convened the Board to determine the classification of Macy's departure. The Board,
in writing, told Macy he was "invited to be heard at a special meeting called to
consider whether [Macy] engaged in an act constituting Cause." Macy and Waste
Managment were told they could each submit a 10-page position paper with no more
than 10 pages of exhibits, submit a proposed Board resolution, and make an oral
presentation to the Board. Although the Board originally limited the oral
presentations to 15 minutes per side, Macy's counsel was allowed approximately 30
minutes to address the Board at the meeting, which lasted approximately two hours. 
In addition to considering the oral statements by the parties' respective attorneys, the
Board considered Macy's employment Agreement; the executive summary of the
forensic audit report; and written documents submitted by counsel for Macy and
Waste Management. Determining Macy committed fraud, the Board issued a
resolution by a unanimous vote that cause existed for Macy's April 2004 termination. 
The Board determined Macy committed fraud by understating his departmental
"headcount" and accumulating accruals. According to the Chairman of the Board,
John Pope, these two problems could result in lack of compliance with the Securities
and Exchange Commission.

 Waste Managment filed a matter-of-law motion for final summary judgment
asserting the Agreement allowed the determination of cause to be made at any time
prior to the date of any payment due under the Agreement. Waste Managment also
argued that the Agreement's unambiguous provisions required the Board to be the
sole and final authority for the determination of cause. Waste Management further
sought repayment of the attorney's fees it advanced to Macy. Waste Management
later filed a matter-of-law and no-evidence motion for final summary judgment that
the decision by the Board was made in good faith, and alternatively, seeking summary
judgment limiting the fact finder to a review of whether the Board acted in good faith
when it found Macy committed fraud.

 Macy filed responses to Waste Management's motion for final summary
judgment and competing motions for summary judgment. Macy challenged the
Board's determination of cause under the Agreement by asserting he did not clearly
waive his right to sue; the Board's determination of cause was not timely made under
the terms of the Agreement; the Board waived its right to determine cause due to the
delay in finding cause; the Agreement did not preclude the jury from reviewing
whether cause to terminate Macy existed; and alternatively, if the trial court
determined the Board's finding could be reviewed only on the matter of whether the
Board acted in good faith, there was evidence raising a question of fact on the
Board's good faith. 

 The trial court rendered partial summary judgment in favor of Waste
Managment, stating, "Section 5(c)(ii) of the Agreement allows the Board . . . to make
a cause determination at any time prior to a payment date for any amount due under
the Agreement." The trial court subsequently granted Waste Management's motion
for final summary judgment.

 Upon prevailing in the summary judgment motions that determined Waste
Management did not breach the Agreement, Waste Management filed a summary
judgment motion for repayment of all the attorney's fees and litigation expenses it
had advanced to Macy under the terms of the Agreement. The trial court declined the
full amount requested by Waste Management, granting the motion for an apportioned
amount. 

 After the trial court granted summary judgment in favor of Waste Managment,
Macy filed a motion for reconsideration of the court's order granting final summary
judgment. In addition to reurging arguments previously presented, Macy asserted
new arguments and evidence. After Waste Management responded to the motion for
reconsideration, the trial court denied the motion and rendered the final, appealable
judgment.

 During the course of the underlying litigation, Macy issued multiple requests
for production and interrogatories, ultimately filing a motion to compel. Waste
Management requested protection from the discovery, as it pertained to individuals
other than Macy. The trial court denied Macy's motion to compel and granted Waste
Management's motion for protection. 


Summary Judgment for Macy's Claims for Breach of Contract

 Macy challenges the trial court's orders granting summary judgment in favor
of Waste Management.

 A. Standard of Review

 We review a trial court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003). To prevail on a summary judgment, the
movant has the burden of proving that there is no genuine issue of material fact and
the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); 
KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748
(Tex. 1999); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex. 1995); Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary
judgment must either (1) disprove at least one element of the plaintiff's cause of
action or (2) plead and conclusively establish each essential element of an affirmative
defense to rebut the plaintiff's cause. Cathey, 900 S.W.2d at 341.

 In our review, we take as true all evidence favorable to the nonmovant, and
indulge every reasonable inference and resolve any doubts in the nonmovant's favor. 
Dorsett, 164 S.W.3d at 661; Knott, 128 S.W.3d at 215; Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997). Our task is to "consider whether
reasonable and fair-minded jurors could differ in their conclusions in light of all of
the evidence presented." Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754,
755-56 (Tex. 2007) (citing Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d 566, 568
(Tex. 2006); City of Keller v. Wilson, 168 S.W.3d 802, 822-25 (Tex. 2005)). When,
as here, a summary judgment does not specify the grounds on which it was granted,
we will affirm the judgment if any one of the theories advanced in the motion is
meritorious. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).
 B. Applicable Law Concerning Interpretation of Contract 

 "Whether a contract is ambiguous is a question of law that must be decided by
examining the contract as a whole in light of the circumstances present when the
contract was entered." David J. Sacks, P.C. v. Haden, 266 S.W.3d 447, 451 (Tex.
2008) (citing Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d
587, 589 (Tex. 1996)). "When parties disagree over the meaning of an unambiguous
contract, the court must determine the parties' intent by examining and considering
the entire writing in an effort to give effect to and harmonize all provisions so that
none will be rendered meaningless." Rolling Lands Invs., L.C. v. Nw. Airport Mgmt.,
L.P., 111 S.W.3d 187, 196 (Tex. App.--Texarkana 2003, pet. denied) (citing Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); First City Nat'l Bank v. Concord Oil Co.,
808 S.W.2d 133, 136 (Tex. App.--El Paso 1991, no writ); KMI Cont'l Offshore
Prod. Co. v. ACF Petroleum Co., 746 S.W.2d 238, 241 (Tex. App.--Houston [1st
Dist.] 1987, writ denied)). Terms in contracts are given their plain, ordinary, and
generally accepted meaning. Creel v. Houston Indus., Inc., 124 S.W.3d 742, 749
(Tex. App.--Houston [1st Dist.] 2003, no pet.). Our primary concern in interpreting
a contract is to ascertain and give effect to the intent of the parties as it is expressed
in the contract. Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207 S.W.3d 342,
345 (Tex. 2006). The intent of the parties must be taken from the agreement itself,
not from the parties' present interpretations, and the agreement must be enforced as
it is written. See Sun Oil Co. v. Madeley, 626 S.W.2d 726, 731-32 (Tex. 1981). 

 The dispute between the parties is over which of the benefits under section 6
of the Agreement Macy is entitled to receive. The parties here agree that Macy was
an at-will employee who could be terminated for no reason at all. See Tex. Farm
Bureau Mut. Ins. Cos. v. Sears, 84 S.W.3d 604, 609 (Tex. 2002). Because Macy was
an at-will employee, Waste Management was required to give Macy only those
benefits specified in the Agreement. See Matagorda County Hosp. Dist. v. Burwell,
189 S.W.3d 738, 740 (Tex. 2006) (noting that to alter at-will relationship, employer
must unequivocally indicate definite intent to be bound not to terminate employee
except under clearly specified circumstances).

 

 C. Terms of Agreement for Board's Determination of Cause

 In his first issue, Macy contends he should be allowed to have a jury
independently decide whether there is cause to terminate him because the Agreement
fails to specify that the Board's decision is final and binding on Macy. Macy cites
Goudie v. HNG Oil Co., 711 S.W.2d 716, 718 (Tex. App.--El Paso 1986, writ ref'd
n.r.e.), Associated Milk Producers v. Nelson, 624 S.W.2d 920, 926 (Tex. Civ.
App.--Houston [14th Dist.] 1981, writ ref'd n.r.e.), and Texaco, Inc. v. Romine, 536
S.W.2d 253, 255 (Tex. Civ. App.--El Paso 1976, writ ref'd n.r.e.). However, these
cases do not require that an express statement about finality be included in the
Agreement. Rather, we must examine the Agreement to determine the intent of the
parties. See Seagull Energy, 207 S.W.3d at 345. Although the Agreement does not
expressly state that the decision is final and binding, it plainly states that Waste
Management is to make the determination of cause. An examination of the entire
Agreement shows it does not provide Macy any right of appeal to another entity, nor
does it refer to any other entity as having the authority to determine cause. We
conclude the intent of the Agreement is that the determination of cause must be made
by Waste Management alone. See id. Nothing in the Agreement supports Macy's
position that a jury should independently decide whether there is cause to terminate
Macy. See id. 

 Macy also contends on appeal, "The Board's decision cannot be afforded any
finality because the contract does not include a clear waiver of the right to sue,
therefore the Court erred in granting summary judgment to Waste Management." See
In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 132 (Tex. 2004) (orig. proceeding)
(holding right to trial by jury in civil case may be waived "with sufficient awareness
of the relevant circumstances and likely consequences"). However, the trial court did
not hold that Macy had waived the right to a trial by jury. Rather, the trial court
determined the merits of the lawsuit for breach of contract by finding that as a matter
of law, Waste Management did not breach its Agreement with Macy. The summary
judgment ruling, deciding the Agreement was not breached as a matter of law,
obviated the need for a jury to resolve the lawsuit for breach of contract. Therefore,
the lack of an express waiver of the right to sue is immaterial because the trial court
did allow Macy to sue for breach of contract and the court did decide the merits of the
claim, albeit by summary judgment. 

 Also within his first issue, Macy asserts the trial court erred in granting
summary judgment because Macy presented evidence raising issues of fact whether
"Macy voluntarily resigned or whether he was terminated for Cause." Macy contends
Waste Management failed to conclusively show there was no dispute about the
credibility of the witnesses, the inferences to be drawn from the evidence, and the
weight to give the evidence. 

 The evidence conclusively shows the Board followed the terms of the
Agreement in determining Macy was terminated for Cause. Macy does not dispute
that all of the procedural requirements in section 5(iii) were met by Waste
Managment. More specifically, Macy does not dispute that the determination of
cause under this Agreement was made by resolution of the Board adopted by
affirmative vote of not less than a majority of the entire membership of the Board at
a meeting called and held for that purpose and at which Macy was given an
opportunity to be heard. 

 The dispute between the parties is whether the requirements in section 5(c)(i)
were met by Waste Management. Section 5(c)(i)(C) provides that Waste
Management "may terminate" Macy's employment for "Cause," which means "fraud
determined in accordance with the Company's normal investigative procedures
consistently applied in comparable circumstances." Giving effect to the intent of the
parties as it is expressed in the contract, the plain reading of the Agreement shows the
only conditions for Waste Management's determination of cause under 5(c)(i)(C) are
that the Board must (1) find fraud (2) as determined in accordance with the
company's normal investigative procedures consistently applied in comparable
circumstances. See Seagull Energy, 207 S.W.3d at 345. The record conclusively
shows that the Board found Macy committed fraud in understating his departmental
"headcount" and in accumulating accruals. 

 Macy suggests irregularity occurred in the investigation procedures. 
Examining the evidence before the trial court at the time it rendered the summary
judgments, Macy's evidence does not raise a question of fact on the matter of whether
the company's normal investigative procedures were applied to Macy in a manner
consistent with comparable circumstances. Brian Thelen's testimony shows that FAS
typically took the lead in conducting investigations for impropriety within the
company. Thelen said he had been involved in approximately a dozen investigations
initiated by a senior vice president such as Caddell, and that at least half a dozen of
those investigations involved allegations of fraud and were conducted solely by FAS. 

 In contrast, Macy pointed to testimony by Karen Francis, one of the
interviewers conducting the forensic audit, who said that she destroyed her notes after
the interviews. Francis testified that after the interviews were conducted, 

 one of us would write up the interview, based on our notes, send it to the
other one, the other one would read it, compare it to their [sic] notes,
make any appropriate edits deemed appropriate by both interviewers and
have a final interview report that we agreed on as accurate. And then we
shred our interview notes after it's recorded into the interview report. 
So we probably shredded those notes before the end of the ESD review.

Although Macy suggests there is a sinister motive behind the destruction of the notes,
he fails to provide any evidence to refute Francis's testimony that all of the
information in the notes was recorded into the interview report. More importantly,
he fails to show that this was not the usual practice of the forensic auditor. The
absence of the handwritten notes does not raise a factual issue on the matter of
whether the company's normal investigative procedures were applied to Macy in a
manner consistent with comparable circumstances. 

 Macy also suggests irregularity in the forensic audit by pointing out that the
company never interviewed Macy or any executive to whom Macy reported. No
evidence shows that the company's normal investigative procedures included
interviewing all ESD employees or the subject of the investigation. The failure of the
forensic auditor to question all employees in ESD also does not raise an issue of fact
concerning the regularity of the investigation procedure. 

 Macy further contends that Waste Management applied a stricter standard to
Macy than to others at Waste Management. Macy refers to testimony by the
chairman, who said that anyone complicit in the headcount or accrual manipulation
should be fired. Macy then argues that "various people in the ESD group knew of the
supposed and alleged improprieties of Macy, not to mention Warren Brauer and Gary
Rind's direct involvement, and still no person was disciplined or terminated for their
[sic] complicity." The evidence fails to raise an issue of fact because the subordinates
were not similarly situated to Macy, who was vice president of ESD. Moreover, the
Agreement required the Board's fraud finding be "determined in accordance with the
Company's normal investigative procedures consistently applied in comparable
circumstances." Under the plain language of the Agreement, the reference to
consistency in application to comparable circumstances refers to the investigative
procedures; the reference does not speak to whether there must be equality in the
punishment for certain conduct by dissimilar employees. 

 Macy further asserts, "The most egregious aspect of the special review is that
Waste Management did not have an official headcount policy and no one involved
(both interviewer and interviewee) had seen a policy regarding accruals." The
Agreement, however, requires the Board's fraud finding to be "determined in
accordance with the Company's normal investigative procedures consistently applied
in comparable circumstances." Under the plain language of the Agreement, the
reference to consistency in application to comparable circumstances refers to the
investigative procedures. The absence of a written or verbal policy is not pertinent
to the procedure employed to investigate Macy. Macy's complaint about the absence
of a policy is a substantive complaint concerning the merits of the Board's finding
and is not a challenge to the Agreement's requirement that a finding of fraud be
"determined in accordance with the Company's normal investigative procedures
consistently applied in comparable circumstances." 

 We conclude Macy's evidence presented to the trial court when the trial court
rendered summary judgment in favor of Waste Management fails to raise a factual
issue. We overrule Macy's first issue. 

 D. Timeliness of Determination for Cause

 In his second issue, Macy challenges the trial court's finding that the Board's
determination of cause was timely under the Agreement. Macy asserts the trial court
erred in interpreting the Agreement to allow the Board to make a cause determination
after the initial severance payment was due. Although the parties agree the language
of 5(c) is unambiguous, they disagree about its meaning. Macy interprets the section
to mean that the Board's right to make a cause determination existed only from the
time the causative act occurred until the next severance payment date, which here
means within 10 days of the day when Macy stopped working for Waste
Management. Macy further argues that because the Board did not act more timely,
it waived its right to determine the nature of Macy's termination. Waste Management
responds that a determination of whether cause for the termination existed may be
made prior to the date of any severance payment, not just the first, or next, severance
payment due.

 We agree with the trial court's interpretation of section 5(c)(ii). Giving effect
to the intent of the parties as it is expressed in the contract, the plain reading of this
section shows the Board is allowed to make a cause determination at any time prior
to a payment date for any amounts due under the Agreement. See Seagull Energy,
207 S.W.3d at 345. The Agreement unambiguously states, "An individual will be
considered to have been terminated for Cause if the Company determines that the
individual engaged in an act constituting Cause at any time prior to a payment date
for any amounts due hereunder . . . ." (Emphasis added). Furthermore, the
Agreement allows the determination of cause to be made at a later point, even when
the employee initially departs for a different reason. The Agreement unambiguously
provides that the determination of cause can be made "regardless of whether the
individual terminated employment voluntarily or is terminated involuntarily, and
regardless of whether the individual's termination initially was considered to have
been for Cause." Under the specific terms of the section describing termination for
cause, the timing of the Board's determination of cause was permitted under the
Agreement. 

 An examination of the entire Agreement is further evidence that the parties did
not intend to limit the determination of cause to the first severance payment, or 10
days. Looking at sections 5 and 6(e) together, Macy's interpretation would require
Waste Management to discover the basis of the cause, accumulate and investigate
relevant facts, convene a special meeting of the Board, and determine cause within
10 days of Macy's termination. If this were not accomplished, under Macy's
interpretation, Waste Management would waive its contractual right to determine
cause and would be required to continue paying all severance benefits owed even if
an investigation ultimately produced evidence of cause. 

 When we read section 5(c)(ii) in light of the definitions, procedures, and review
required by sections 5(c)(i) and (iii), and in light of the severance provisions of
section 6, we cannot interpret the phrase "prior to a payment date for any amounts due
hereunder" as reflective of the parties' intent to undertake all of the requirements of
section 5(c) prior to the first severance payment. Macy's interpretation would
immediately cut off the determination rights afforded Waste Management in sections
5(c)(ii) and (iii), rendering those rights meaningless. See Rolling Lands Invs., 111
S.W.3d at 196-97. Macy's interpretation is not supported by a reading of the entire
Agreement. See Dorsett, 164 S.W.3d at 662. We conclude section 5(c)(ii) is more
reasonably interpreted to intend such a time frame that the procedures of 5(c)(i) and
(iii) could be conducted. We hold that the trial court properly granted summary
judgment, finding as a matter of law that the Board's determination of cause was
timely, and not waived, under the Agreement. See Nixon, 690 S.W.2d at 548.

 Macy also contends Waste Management waived the right to claim termination
for cause due to its 16-month delay in convening the Board to make that
determination. The record reflects that Macy's successor suspected cause for Macy's
termination shortly after Macy's departure, and that Waste Management filed an
amended answer within months of Macy's petition suggesting termination may have
been for cause, conducted internal investigations, convened its Board, and determined
cause within 16 months of Macy's termination. Having held Waste Management
timely determined cause, we do not infer Waste Management's conduct demonstrated
an actual intent to relinquish its right to determine cause, and Waste Management did
not waive its right to do so. See Williams v. Moores, 5 S.W.3d. 334, 337 (Tex.
App.--Texarkana 1999, pet. denied). 

 Macy further asserts, "Since Waste Managment failed to make payments to
Macy as they came due, the company had materially breached the Agreement and was
therefore precluded from taking advantage of the termination for cause provisions at
a later date." Macy is correct that under contract law a party who has broken a
contract cannot thereafter enforce the remaining terms. See Baker Marine Corp. v.
Weatherby Eng'g Co., 710 S.W.2d 690, 696 (Tex. App.--Corpus Christi 1986, no
writ) (noting breaching party "cannot take advantage of provisions favorable to it
contained in the very contract which it was found to have breached"). However, as
we have explained above, the record undisputedly shows that the Agreement allowed
Waste Management to make its cause determination at any point before any of the
severance payments were due and even after termination for reasons other than cause. 
We hold that Waste Managment did not breach the Agreement by determining cause
for termination after Macy separated from the company for a different reason.

 We overrule Macy's second issue.

Macy's Motion for Reconsideration of the Summary Judgment

 In its appellee's brief, Waste Management contends we should disregard most
of the evidence Macy refers to in his appellant's brief because the evidence was not
part of the evidence before the trial court when the trial court granted the summary
judgments in favor of Waste Management. Although Macy filed a reply brief, he did
not dispute that he could have presented the evidence in the motion for
reconsideration when the trial court rendered the summary judgment order, nor does
he explain why this evidence was not presented to the trial court prior to rendition of
the summary judgment.

 "After a court grants a summary judgment motion, the court generally has no
obligation to consider further motions on the issues adjudicated by the summary
judgment." Kelly v. Gaines, 181 S.W.3d 394, 416 (Tex. App.--Waco 2005), rev'd
on other grounds, 235 S.W.3d 179 (Tex. 2007); see Gorrell v. Tex. Utils. Elec. Co.,
915 S.W.2d 55, 60 (Tex. App.--Fort Worth 1995), writ denied, 954 S.W.2d 767
(Tex. 1997). The standard of review for a motion to reconsider a prior summary
judgment is whether the trial court abused its discretion. AIC Mgmt. v. Baker, No. 01-02-01074-CV, 2003 WL 22724629, at *7 (Tex. App.--Houston [1st Dist.] 2003, pet.
denied) (mem. op.). An abuse of discretion will not be found if the movant cites no
additional evidence "beyond that available to him" when the first summary judgment
was granted. See Kelly, 181 S.W.3d at 416. 

 After the trial court rendered the summary judgment order in favor of Waste
Management, Macy filed a motion for reconsideration that included a large volume
of evidence he had never before presented to the trial court. Macy presented new
evidence to assert a question of fact by claiming that (1) "there was no defined
methodology for conducting the investigation or special review, and the auditor
tasked with performing the review, Karen Francis, was not familiar with the
whistleblower process of Waste Management"; (2) portions of interviews that were
conducted were omitted from the special review report; (3) some people who were
interviewed were not afforded the opportunity to review their statements for
inaccuracies and some felt intimidated; (4) "[w]itnesses were shocked to find material
misstatements and mischaracterizations 'attributed' to them after finally getting the
chance to review their witness statements" created by the audit team; and (5) some
members of the Board reviewed the entire forensic audit report when Macy was
allowed only 10 pages to present his case.

 The motions for reconsideration are based on evidence and arguments available
to Macy before the trial court rendered the summary judgment order. See id. We
cannot conclude the trial court abused its discretion by refusing to reconsider its
summary judgment. See id.

Denial of Discovery

 In his third issue, Macy challenges the trial court's order denying certain
discovery to Macy.

 An appellate court reviews a trial court's ruling on a motion to compel
discovery under an abuse-of-discretion standard. See Johnson v. Davis, 178 S.W.3d
230, 242 (Tex. App.--Houston [14th Dist.] 2005, pet. denied) (citing Cire v.
Cummings, 134 S.W.3d 835, 838 (Tex. 2004) (discussing discovery sanctions)). Trial
courts have broad discretion in matters of discovery. Johnson, 178 S.W.3d at 242. 
An appellate court should reverse a trial court's ruling on a motion to compel only
when the trial court acts in an arbitrary and unreasonable manner, without reference
to any guiding principles. See Barnett v. County of Dallas, 175 S.W.3d 919, 924
(Tex. App.--Dallas 2005, no pet.).

 Macy states that he "attempted to pursue discovery regarding Revenue
Management System and the 'substantial impact' of a potential $60 Million write
down on the company's books and records as compared to the accrual balance Macy
was accused of accumulating." Macy contends, "The contract required that any gross
negligence or gross misconduct attributed to Macy have a 'substantial effect on the
company.'" This evidence is immaterial to whether Waste Management failed to
comply with the terms of the contract that left it up to the Board to decide whether
Macy committed fraud.

 Macy next contends he wanted more discovery into other investigations
conducted by Waste Management to determine whether this investigation was
conducted "in accordance with the Company's normal, internal investigative
procedures consistently applied in comparable circumstances." As shown by the
exhibits attached to the motion for reconsideration of the summary judgment, Macy
deposed the chairman, many of the employees assigned to ESD, and individuals
conducting the forensic audit. Macy fails to show how the trial court abused its
discretion by denying further discovery into other investigations conducted by the
forensic auditors. We conclude the denial of the discovery was not so arbitrary and
unreasonable that it amounts to a clear and prejudicial error of law. Austin v.
Countrywide Homes Loans, 261 S.W.3d 68, 75 (Tex. App.--Houston [1st Dist.]
2008, pet denied); Johnson, 700 S.W.2d at 917; see also Lovelace v. Sabine Consol.,
Inc., 733 S.W.2d 648, 652 (Tex. App.--Houston [14th Dist.] 1987, writ denied). We
hold the trial court did not abuse its discretion by denying the requested discovery. 
See Dillard Dep't Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex. 1995).

 We overrule Macy's third issue. 

Waste Management's Cross Appeal for Entire Amount of Attorney's Fees 

 In its two issues in the cross-appeal, Waste Management challenges the trial
court's grant of summary judgment for a partial amount of the attorney's fees it
requested from Macy. 

 As we explain above, we review a trial court's summary judgment de novo. 
See Dorsett, 164 S.W.3d at 661. The movant has the burden of proving that there is
no genuine issue of material fact and that he is entitled to judgment as a matter of law. 
 See Nixon, 690 S.W.2d at 548. We take as true all evidence favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts in the
nonmovant's favor. Dorsett, 164 S.W.3d at 661. 

 Shortly after the lawsuit was filed in 2004, the trial court granted Macy's
motion to have Waste Management advance interim attorney's fees and costs
pursuant to section 10 of the Agreement, which provides,

 If at any time during the term of this Agreement or afterwards there
should arise any dispute as to the validity, interpretation or application
of any term or condition of this Agreement, the Company agrees . . . to
promptly provide sums sufficient to pay . . . Employee's reasonable
costs and reasonable attorney's fees . . . , provided: (a) that Employee
shall repay any such amounts paid or advanced if Employee is not the
prevailing party with respect to any dispute or litigation arising under
Sections 5(c) or 8 of this Agreement, or (b) . . . [that] Employee did not
initiate frivolously such litigation.


 Section 8 is inapplicable because it pertains to restrictive covenants not to
compete. Section 5(c) is the section describing termination for cause. Thus, the
question is whether this entire dispute from the beginning arose under section 5(c),
because if it did, then Waste Management is entitled to the entire amount, but if it did
not, then Waste Management is entitled to only the amount from the point that the
dispute began to arise under section 5(c).

 Waste Management contends it should have received the full amount of the
fees it advanced to Macy, which is $357,843.40, rather than the portion it received,
which is $170,173.19. The court initially calculated reimbursement due to Waste
Management in the amount of $187,932.74 by determining that was the amount
Waste Management advanced to Macy from the point the Board determined Macy
was terminated for cause on August 25, 2005 to the point the litigation culminated. 
The court then subtracted $17,759.55 from the $187,932.74 because $17,759.55 was
the amount of fees spent in the parties' section 10 dispute over the repayment of costs
and fees. Accordingly, the court ordered Macy to repay fees in the amount of
$170,173.19. 

 Examining the plain terms of the Agreement, Macy, as the non-prevailing
party, must repay the sums advanced "with respect to any dispute or litigation arising
under Sections 5(c) . . . of this Agreement." See Creel, 124 S.W.3d at 749 (requiring
examination of plain terms). Section 5 of the Agreement included departures from
Waste Management for reasons of voluntary termination by the employee, and
termination by Waste Management without cause. Those departures would not
invoke section 10 of the Agreement, which only referenced departure under section
5(c), the section describing termination for cause. Section 5(c) of the Agreement was
not the subject of the dispute between Macy and Waste Management until the Board
referred to section 5(c) in deciding to terminate Macy for cause on August 25, 2005. 
When the Board made its determination that Macy was terminated for cause, the
dispute became about section 5(c) of the Agreement. Before then, the dispute
pertained to section 5(e) for termination without cause and section 6(e) for the
company's failure to pay severance due to Macy for terminating him without cause. 
Although section 5(c)(ii) permits the cause determination to apply retroactively to the
date of Macy's departure, it does not serve to amend the nature of the claims Macy
filed in his lawsuit. Having reviewed the language of section 10 and giving those
terms their plain and ordinary meaning, the trial court properly determined that only
those sums that accrued after the August 25, 2005 cause determination arose under
section 5(c). See id. Similarly, the court properly determined that the sums advanced
after August 25, 2005 to dispute the repayment of fees under section 10 of the
Agreement did not arise from sections 5(c) or 8 of the Agreement. We therefore hold
the trial court properly awarded Waste Managment the amount of $170,173.19. 

 We overrule the two issues presented in Waste Management's cross-appeal.

Conclusion

 We affirm the judgment of the trial court.

 

 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack, and Justices Alcala and Hanks.